Tagged for publication



**ORDERED in the Southern District of Florida on December 3, 2013.**

John K. Olson, Judge
United States Bankruptcy Court

_____

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION
www.flsb.uscourts.gov

In re:                                              Case No. 12-13989-JKO
                                                    Chapter 7
PETER G. HERMAN,

    Debtor.
_____/

**ORDER DISCHARGING ORDER TO SHOW CAUSE
ADDRESSED TO DEBTOR PETER G. HERMAN AND
IMPOSING SANCTIONS ON HIS ATTORNEY BART A. HOUSTON**

    This Chapter 7 case came before the Court for evidentiary hearing on November 13, 2013, on the Court's *sua sponte Order to Show Cause Addressed to Debtor Peter G. Herman and his Attorney Bart A. Houston and Directing Attendance by Them and Other Parties* (the "Order to Show Cause") [ECF 198] entered September 6, 2013. The Court has jurisdiction pursuant to the provisions of (a) 11 U.S.C. § 329; (b) Federal Rules of Bankruptcy Procedure 2014, 2016 and 2017; (c) 11

U.S.C. § 105; (d) the Court's inherent power to regulate the conduct of parties and lawyers who appear before it, *Chambers v. NASCO, Inc.,* 501 U.S. 32, 43 (1991); *In re Evergreen Security, Ltd.,* 570 F.3d 1257, 1263 (11th Cir. 2009); *In re Walker,* 532 F.3d 1304, 1309 (11th Cir. 2008); *In re Mroz,* 65 F.3d 1567, 1574 (11th Cir. 1995); and (e) Local Rule 2090-2. For the reasons set forth below, the Order to Show Cause is discharged as to Debtor Peter G. Herman and sanctions are imposed upon his attorney, Bart A. Houston.

The Debtor filed his petition under Chapter 7 on February 18, 2012 [ECF 1]. He has at all times in the case been represented by Houston. On March 20, 2012, the Debtor filed his Schedules and Statement of Financial Affairs ("SOFA") [ECF 14]. In his SOFA, the Debtor disclosed the following in response to question 9:

> **9.    Payments related to debt counseling or bankruptcy**
>
> List all payments made or property transferred by or on behalf of the debtor to any persons, including attorneys, for consultation concerning debt consolidation, relief under the bankruptcy law or preparation of the petition in bankruptcy within **one year** immediately preceding the commencement of this case.

| NAME AND ADDRESS OF PAYEE | DATE OF PAYMENT, NAME OF PAYOR, IF OTHER THAN DEBTOR | AMOUNT OF MONEY OR DESCRIPTION AND VALUE OF PROPERTY |
|---|---|---|
| **Kopelowitz Ostrow 200 SW 1st Street Syute** [sic] **1200 Fort Lauderdale, FL 33301** | February 2012 | 15,000 |

The Debtor signed his Schedules and SOFA under penalty of perjury pursuant to 28 U.S.C. § 1746. The Debtor accordingly swore under penalty of perjury that the total fees paid to Houston, who was then an employee of the Kopelowitz Ostrow law firm, was $15,000; that he personally had paid those

fees; and that they were paid in February 2012. No amended or supplemental disclosure has been filed by the Debtor.

On the same day that the Debtor filed his SOFA containing these representations, Houston filed his Disclosure of Compensation of Attorney for Debtor(s) [ECF 17], a required document under Federal Rule of Bankruptcy Procedure ("Rule") 2016(b) (the "Rule 2016 Disclosure"). In it, Houston disclosed that he had agreed to be paid $20,000 for legal services in connection with the Debtor's bankruptcy case;[1] that this amount had been paid to him prior to the filing of the Rule 2016 Disclosure; that the Debtor was the source of the compensation paid to him; and that he had not "agreed to share the above-disclosed compensation with any other person unless they are members and associates of my law firm." No amended or supplemental disclosure has been filed by Houston.

On July 19, 2012, CIB Marine Capital, LLC ("CIB Marine") filed a complaint [ECF 1] against the Debtor seeking denial of the Debtor's discharge pursuant to 11 U.S.C. §§ 727(a)(2)(B) and 727(a)(4)(A) and Rules 4004 and 7001 in Adversary Proceeding 12-1785-JKO (the "Discharge Action"). CIB Marine held a $4.5 million judgment against the Debtor arising out of a deficiency claim on a failed real estate investment which had been guaranteed by the Debtor. The Debtor's Chapter 7 Trustee, Kenneth A. Welt ("Trustee Welt") sought to intervene as a party plaintiff in the Discharge Action by Motion [ECF 9], filed August 31, 2012, granted by Order [ECF 13], entered October 3, 2012.

The Discharge Action was tried before this Court on June 5 and 6, 2013. Findings of Fact and Conclusions of Law ("Findings and Conclusions") [ECF 115] were entered August 6, 2013. In

---

[1] Other than services related to "[r]epresentation of the debtor in any dischargeability actions or any other adversary proceedings."

3

them, this Court denied the Debtor a discharge under 11 U.S.C. §§ 727(a)(2)(A), 727(a)(2)(B), and 727(a)(4)(A). Final Judgment in favor of CIB Marine and Trustee Welt [ECF 120] was entered on August 22, 2013. An appeal is pending.

In the Findings and Conclusions, this Court found the following facts [ECF 115, pp. 34-36]:

### I. The Pam Herman Transfers

Prior to the Petition Date, the Debtor had an investment account at American Funds (Account No. XXXX4161), through which he held shares in The Growth Fund of America-A and The Growth Fund of America-B (collectively, the "Growth Fund Shares"). The Growth Fund Shares were assets of the Debtor that were purchased with the Debtor's savings. *See* Pretrial Stipulation at ¶ 51.

On or about November 29, 2011, the Debtor caused his Growth Fund Shares, which constituted property of the Debtor, to be liquidated for an aggregate sale price of $46,278.25 (the "Sale Proceeds"). The Debtor received payment on the Sale Proceeds via two separate checks from American Funds in the amounts of $24,545.45 and $21,732.80 (the "American Funds Checks"), both of which were payable to the Order of "Peter G. Herman." *Id.* at ¶¶ 52-53.

On or about December 7, 2011, the Debtor caused the American Funds Checks to be deposited in an account at Wells Fargo Bank (Account No. XXXX9849), which was a joint account in the name of the Debtor, Peter G. Herman, and his ex-wife, Pamela M. Herman (the "Joint Account"). *Id.* at ¶ 54. The Debtor listed his interest in the Joint Account on Schedule B of his Schedules. On the very next day, December 8, 2011, the Sale Proceeds in the Joint Account were transferred to a separate account held solely by Pamela M. Herman at Wells Fargo Bank (Account No. XXXX0370) (the "First Pam Herman Account"). At the time immediately preceding the foregoing transfer, the First Pam Herman Account held only $30.11. The Debtor does not have any ownership interest in First Pam Herman Account, did not list any ownership interest in such account as an asset in his Schedules, and did not list the transfer of the Sale Proceeds to the First Pam Herman Account in his SOFA. *Id.* at ¶ 55. On or about December 9, 2011, the Sale Proceeds were transferred from the First Pam Herman Account to a separate account held solely by Pamela M. Herman at Wells Fargo Bank (Account No. XXXX9086) (the "Second Pam Herman Account"). From the time of the foregoing transfer, and through the Petition Date, the Second Pam Herman Account was funded exclusively by the transfer of the Sale Proceeds and interest accruing thereon and did not contain any other funds. The Debtor does not have any ownership interest in the Second Pam Herman Account, did not list any ownership interest in such account as an asset in his Schedules, and did not list the

4

transfer of the Sale Proceeds from the First Pam Herman Account to the Second Pam Herman Account in his SOFA. *Id.* at ¶ 56.

As of the Petition Date, the Second Pam Herman Account contained only $90.07. In the 37 days preceding the Debtor's bankruptcy filing, the remainder of the Sale Proceeds were transferred out of the Second Pam Herman Account as follows (collectively, the "Transfers"):

      i.     $5,000 (Withdrawal) on January 13, 2012;

      ii.    $1,500 (Withdrawal) on February 3, 2012;

      iii.   $30 (Wire Transfer) on February 10, 2012;

      iv.   $35,000 (Wire Transfer to The Kopelowitz Firm PA Trust Account) on February 10, 2012;

      v.    $400 (Online Transfer to First Pam Herman Account) on February 14, 2012; and

      vi.   $4,300 (Withdrawal) on February 17, 2012.

As stipulated to in the Pretrial Stipulation, the Debtor did not list any of the foregoing Transfers on his Schedules or SOFA. *Id.* at ¶¶ 58-59.

The testimony at Trial and the documentary evidence introduced showed that when the Transfers were made, CIB Marine had obtained the final judgment of foreclosure against Esquire Ventures, and the Debtor admitted that CIB Marine had filed the motion seeking a deficiency judgment against him. The Transfers were from the Debtor to Pam Herman's account in which the Debtor admitted he did not have an interest. The CIB Marine Judgment was not against Pam Herman. Thus, the Court finds that the Transfers effectuated a movement of funds from an account subject to CIB Marine's reach to an account out of CIB Marine's reach.

The Debtor was unable to explain the discrepancy between the $35,000 transfer Pam Herman made to The Kopelowitz Firm PA Trust Account and his disclosure of a $15,000 transfer to Kopelowitz in his SOFA. The Debtor could not identify where the additional $20,000 to the Kopelowitz Firm was disclosed in his Schedules or SOFA, and ultimately admitted that the $20,000 transfer was not disclosed. The Court further finds that the Debtor's testimony that certain transfers were made to pay workmen on his condominium was not credible, as no documents were admitted into evidence to support this contention, the Debtor did not identify who was paid,

and these transfers were not disclosed in his Schedules or SOFA. The Debtor admitted at Trial that the Transfers in the amount of approximately $46,000 were not disclosed in his Schedules or SOFA.

On August 30, 2013, after the Debtor's Notice of Appeal was filed, an Affidavit of Jeffrey M. Ostrow (the "Ostrow Affidavit") [ECF 128] was filed in the Discharge Action. Mr. Ostrow alleges under oath that Kopelowitz Ostrow, of which he is the managing partner, "was not paid $20,000 in legal fees for this bankruptcy proceeding and was not paid an additional $15,000 for legal fees for other debt counseling and legal services. Instead, the total amount paid to Kopelowitz Ostrow from the monies wire into its Trust Account by Peter G. Herman's ex-wife was $16,545.19." The Ostrow Affidavit states that after the $35,000 wire from the Second Pam Herman Account was wired into the Kopelowitz Ostrow Trust Account on February 10, 2012, it was disbursed as follows:

- $6,000 to David Carpenter by check 7750 on February 29, 2012, on Houston's instructions.

- $13,893.29 to the firm's operating account for payment of Herman's legal fees on July 13, 2012.

- $11,604.81 to Plum Creek by check 7954 on August 10, 2012, on Houston's instructions.

- $850 to Trustee Welt on November 19, 2012, on account of sanctions ordered by this Court by Agreed Order [ECF 98, in the Debtor's main bankruptcy case] entered November 1, 2012.

- $2,651.90, the balance in the Trust Account, to the firm's operating account for payment of the Debtor's legal fees on November 29, 2012.

Based upon the evidence at trial on the Order to Show Cause, the Court finds that the accounting set forth in the Ostrow Affidavit was correct. Of the $35,000 wired into the Kopelowitz Ostrow Trust Account from the Second Pam Herman Account on February 10, 2012, $6,000 was disbursed on Houston's instructions to David Carpenter, a friend and client of Houston's who had,

from time-to-time in the past, lent money to Houston when Houston was a partner in the subsequently-failed law firm Adorno & Yoss. Carpenter had no connection to the Debtor's bankruptcy case and provided no legal services (or any other services) to the Debtor. In addition, $11,604.81 was disbursed to WACO Hunt Club to purchase a 2012 - 2013 hunting license on land owned by Plum Creek (a timber company) and located in Washington County ("WACO"), Georgia. In fact, WACO Hunt Club was Houston himself. It was Houston who organized the Hunt Club, and aside from $800 he was reimbursed by his brother, no one else paid money for the hunting license.

The unrebutted testimony at the November 13th trial was that Houston and a few friends – including the Debtor, Peter Herman – hunted on the land during the 2012 - 2013 license year. Herman did not contribute to the license, but did contribute a camper which he purchased post-petition for $8,500 to provide additional accommodations for the hunting party or parties.

The Court is satisfied on the basis of the evidence presented that Herman was completely unaware of Houston's embezzlement from the Kopelowitz Ostrow Trust Account of the $6,000 paid to David Carpenter or the $11,604.81 paid for the WACO hunting license. Herman was unaware of these things at the time of the embezzlements, or thereafter, until the Ostrow Affidavit was filed. Herman testified that he regarded the $35,000 paid into the Kopelowitz Ostrow Trust Account was the full fee payable for the prepetition advice he received from Houston and for the bankruptcy representation itself (with the exception of litigation matters expressly excluded from that fee). This view of Herman's was entirely reasonable in the circumstances, and nothing Houston told him would have caused him to be on inquiry notice. The Court is accordingly satisfied that none of the issues raised by the Ostrow Affidavit, or by the evidence at trial, suggest improprieties by Herman or form any basis for the imposition of sanctions on Herman, who has already lost his bankruptcy discharge.

The Order to Show Cause is therefore discharged as to Herman.

The situation with Houston is, sadly, far different.

David Carpenter was a friend and long-time client of Houston's at his prior law firms Houston & Shahedy; Adorno & Yoss; Genovese, Joblove & Battista; and Kopelowitz Ostrow. Houston had on occasion while at Adorno & Yoss borrowed money from Carpenter, loans which had long since been paid back. In February 2012, shortly after Pamela Herman transferred the $35,000 into the Kopelowitz Ostrow Trust Account – wire instructions given to her by Houston's staff acting at Houston's direction – Carpenter called Houston and asked to borrow money to deal with an urgent business problem. Houston told Carpenter he did not have any money to lend, then called back to offer $6,000. Carpenter was unaware that the source of these funds was the Kopelowitz Ostrow Trust Account, or that their origin was in Houston's representation of Herman. Just as Herman had no knowledge of Carpenter, Carpenter had no knowledge of Herman.

At the time Houston caused a check for $6,000 to be drawn on the Kopelowitz Ostrow Trust Account on February 29, 2012, and sent to Carpenter, Carpenter was indebted to Kopelowitz Ostrow in an amount in excess of $5,000, and remains indebted to the firm in an amount in excess of $7,000.

Contemporaneously with his embezzlement of the $6,000 from the Kopelowitz Ostrow Trust Account, Houston was in the process of what can fairly be described as a messy divorce. On March 9, 2012, in that divorce case, he falsely swore under oath in a financial affidavit that he owed David Carpenter $12,000. He did not. He repeated that false oath (that he owed Carpenter $12,000) in an amended family law affidavit dated June 5, 2012. Months later, on February 26, 2013, he executed another amended family law financial affidavit in which he swore that he owed David Carpenter $17,000. None of these affidavits was true; in fact, Houston did not owe David Carpenter any

money on any of the dates in question or at any other time since the filing of Herman's bankruptcy petition on February 18, 2012.

Houston claims that the $35,000 sent to the Kopelowitz Ostrow Trust Account should have been transferred to the firm's Operating Account.  But he acknowledged at trial that he knew that those funds were in the firm's Trust Account when he directed that a check for $6,000 be sent from the Trust Account to Carpenter.

Houston also testified that he knew that the remaining funds in the Kopelowitz Ostrow Trust Account were in that account at the time in August 2012 when he directed that $11,604.81 be sent from the Trust Account to pay for his hunting lease nominally held in the name of WACO.  Here again, Houston claimed that the funds should have been long-since transferred to the firm's Operating Account, and that he had no recollection of why they were not.  There is good reason to doubt this version of events.

Jeffrey Ostrow testified that it was not uncommon for Kopelowitz Ostrow, a firm with a substantial real estate practice, to issue checks for leases from its Trust Account.  When the Court inquired about the adequacy of the firm's controls, Ostrow testified that Kopelowitz Ostrow had never before experienced trust account finagling by its lawyers, and that Houston, an experienced lawyer with his own clients, and a nominal[2] "partner" in the firm, was implicitly authorized to direct distributions of client money in the firm's Trust Account.  One wonders, however, whether Houston would have been able to embezzle these funds had they already been transferred to the firm's

---

[2]Houston was not an owner of any equity interest in the firm and was a W-2 employee.

Operating Account. Regardless, they were not.[3]

The entire $35,000 transferred by Pamela Herman to the Kopelowitz Ostrow Trust Account remained in that account until it was disbursed in the manner disclosed for the first time in the Ostrow Affidavit. To be blunt: Houston stole $17,604.81 from the Kopelowitz Ostrow Trust Account, he lied about it to this Court, and he suborned false testimony about it from his unwitting client Herman. Herman's disclosures on his Statement of Financial Affairs regarding payments to Houston were false. Houston's disclosure under Bankruptcy Rule 2016 was false. And Herman's testimony at trial in the Discharge Action was false, although he did not know that at the time. Houston did.

Houston's conduct with respect to the Kopelowitz Ostrow Trust Account constitutes a clear violation of Rule 5-1.1(b) of the Rules Regulating The Florida Bar, which provides in relevant part:

> **(b) Application of Trust Funds or Property to Specific Purpose.** Money or other property entrusted to an attorney for a specific purpose, including advances for fees, costs, and expenses, is held in trust and must be applied only to that purpose.

---

[3]Houston's theory that it would have been entirely proper to move the $35,000 into the Kopelowitz Ostrow Operating Account upon receipt into the firm's Trust Account raises an interesting legal question: namely, the nature of retainers for bankruptcy services. Retainers generally come in three varieties: First, "classic retainers" paid to bind an attorney and preclude him from representing another person, and simply as payment for accepting the case. Second, a "security retainer" held by the attorney to secure payment of fees for future services. Post-petition, such a retainer is property of the bankruptcy estate, and drawing upon it requires court authorization. Third, an "advance payment retainer" represents advance payment for future services, intended to be treated as "earned when paid." *See, generally, In re McDonald Bros. Construction, Inc.,* 114 B.R. 989 (Bankr. N.D. Ill. 1990), in which Judge Eugene Wedoff thoroughly discusses the distinction among the types of retainers. In light of the express statutory authority for bankruptcy courts to direct the disgorgement of excessive retainers under 11 U.S.C. § 329(b), it is doubtful whether any of these categories of retainers could ever truly be said to be "earned when paid." Earned when paid, perhaps, but subject to review under § 329(a) and disgorgement under § 329(b).

When Houston took the funds in the Trust Account and used them to make a loan to Carpenter and to buy his own hunting lease, he breached Rule 5-1.1(b).

Houston's conduct in making false statements to this Court and in offering evidence which he knew to be false are patent violations of Rule 4-3.3(a), which requires candor toward the tribunal. His conduct is further violative of Federal Rule of Bankruptcy Procedure 2016(b), which requires full disclosure of payments promised or made, and supplementary disclosure within 15 days after any payment or agreement not previously disclosed. Houston made no disclosure of the transfer to Carpenter or of the transfer to himself for the hunting license.

It further appears to this Court that Houston's conduct may have violated several provisions of Title 18, United States Code. It appears that he knowingly and fraudulently made false oaths and declarations in violation of 18 U.S.C. § 152. It appears that he embezzled to his own use property of the estate in violation of 18 U.S.C. § 153. And it appears that he engaged in bankruptcy fraud in violation of 18 U.S.C. § 157. All of these matters are required to be disclosed to the United States Attorney pursuant to 18 U.S.C. § 3057 for appropriate investigation and prosecution. Because the United States Trustee, as an officer of the Department of Justice, is in a far better position than this Court in making such referrals for prosecution, the Court formally requests that the United States Trustee do so.

The matters which have come to light in this case which are discussed in this Order came to the Court's attention as a result of the filing of the Ostrow Affidavit. The Court hereby expresses its gratitude to Mr. Ostrow and his firm. These matters were investigated by the Trustee, Kenneth A. Welt, and his counsel at GrayRobinson, P.A., at the Court's direction. Pursuant this Court's Scheduling Order [ECF 253], counsel to the Trustee was directed to file an affidavit "reflecting the

fees and costs incurred by the Trustee and his counsel" in connection with the Order to Show Cause. That affidavit, prepared by Robert A. Schatzman of the firm and filed November 22, 2013 [ECF 259], indicates that the Trustee and his counsel incurred $69,453.50 in fees and $212.41 in costs. The Scheduling Order further directed that any responses or objections to the fee affidavit be filed on or before November 28, 2013. Houston filed a response and objection [ECF 261] on November 30, 2013, which, although untimely,[4] is nonetheless considered by the Court.

Houston objects to the fees sought by GrayRobinson because he contends the case was overstaffed, and because the firm "needlessly expended time on matters outside the scope of the assignment." After careful review of the GrayRobinson billings attached to the Schatzman affidavit, the Court agrees that certain of the time expended appears to be excessive. Specifically, the Court will not allow the following: (1) $437.50 of the amount sought for the preparation and review of discovery in the period September 16 to 20, 2013; (2) $2,000 of the amount sought for paralegal services, representing that portion of the fees sought which appear to be primarily clerical in nature; (3) $500 of the amount sought for reviewing discovery on October 7, 2013; (4) $980 of the amount sought for the telephonic deposition of Carpenter; and (5) $2,000 of the amount sought for the preparation for the depositions of Herman and Houston. The Court accordingly will disallow $5,917.50 of the $69,453.50 in fees sought and allow the balance of $63,536 in fees and the full costs sought. All of the allowed fees and costs provided benefit to the estate and were helpful to the Court in dealing with the issues raised by the Order to Show Cause.

In the interest of brevity, the Court has set forth its factual conclusions with respect to the

---

[4] Houston's response recites that although it "was due Friday, November 29, 2013" [the Scheduling Order actually required such a response by November 28, 2013] and that his internet service was "down" on November 29th.

services provided by GrayRobinson pursuant to the Order to Show Cause.  To the extent that any party in interest seeks additional or more detailed factual findings, it may do so by motion seeking such additional factual findings pursuant to Federal Rule of Bankruptcy Procedure 9023 filed within the time limitations set forth in that Rule.  In allowing fees, the Court has considered each of the factors set forth in *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714 (5th Cir. 1974), *In re First Colonial Corp. of America,* 544 F.2d 1291 (5th Cir. 1977), and *Grant v. George Schumann Tire & Battery Company,* 908 F.2d 874 (11th Cir. 1990).  To the extent that any party in interest seeks additional or more detailed legal conclusions, it may similarly do so by motion seeking additional conclusions of law  pursuant to Rule 9023 filed within the time limitations set forth in that Rule.

The fees and expenses allowed to GrayRobinson pursuant to this Order are costs of administration of the Debtor's Chapter 7 estate, and are to be paid by the Trustee.  Because these fees and costs are the direct result of Houston's misconduct, Houston will be directed to reimburse the Trustee for the entire amount of these fees and costs, with the exception of $945 in fees incurred by GrayRobinson in connection with the Trustee's motion to reschedule the Order to Show Cause hearing and to which Houston has requested that these "time entries should not be shifted to the third party."

Based upon the foregoing, it is **ORDERED:**

2. The Order to Show Cause directed to the Debtor, Peter G. Herman, is hereby **DISCHARGED.**

3. Bart A. Houston is hereby **SANCTIONED** for the filing of false statements of compensation paid or agreed to be paid in violation of 11 U.S.C. § 329 and Federal Rules of Bankruptcy Procedure 2014, 2016, and 2017.

    4.       Bart A. Houston is hereby **SANCTIONED** for the filing of false statements and the suborning of false testimony under this Court's inherent power to regulate the conduct of lawyers who appear before it.

    5.       Trustee's counsel GrayRobinson, P.A., is hereby **AWARDED** fees in the amount of $63,536 and costs in the amount of $212.41, aggregating **$63,748.41**, as costs of administration of this Chapter 7 estate. The Trustee is hereby **AUTHORIZED** and **DIRECTED** to pay this sum to GrayRobinson, P.A.

    6.       As sanctions for his misconduct in connection with this case, the Court imposes the following penalties on Bart A. Houston pursuant to Local Rule 2090-2:

        a.       Bart A. Houston is hereby **ORDERED** to pay the Trustee **$62,803.41** for the fees and costs incurred as a result of his misconduct which are fairly and justly attributable to him. Such reimbursement is **ORDERED** to be made within **21** days of this Order.

        b.       Bart A. Houston is hereby **SUSPENDED** from the practice of law before this Court, effective immediately. Bart A. Houston may seek reinstatement to practice before this Court by motion made in this case upon a showing of rehabilitation.

    7.       The Clerk of this Court is hereby **DIRECTED** to terminate Bart A. Houston's CM/ECF filing privileges, effective immediately.

    8.       The matters set forth herein are hereby **REFERRED** to the District Court's Peer Review and Grievance Committee pursuant to Rule III of the Rules Governing Attorney Discipline of the United States District Court for the Southern District of Florida for its investigation and review, with a recommendation that Bart A. Houston be suspended from the practice of law in the District Court.

9. The matters set forth herein are hereby **REFERRED** to The Florida Bar for its investigation and review pursuant to Rule 3 of the Rules Regulating The Florida Bar.

10. The United States Trustee for Region 21 is hereby **REQUESTED** to investigate the matters set forth herein to the extent he deems appropriate, including under 18 U.S.C. §§ 152, 153 and 157, and to report the results of his investigation to the United States Attorney pursuant to 18 U.S.C. § 3057.

11. This Order is effective upon its entry.

###