UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

In re:                                              Case No. 12-13989-JKO

PETER G. HERMAN,                                    Chapter 7

          Debtor,
_____/

**MOTION TO REOPEN CASE, FOR ENTRY OF AN ORDER PRECLUDING PETER
HERMAN FROM PURSUING CLAIMS THAT HE CONCEALED DURING THE
BANKRUPTCY CASE, AND FOR AN ORDER CONFIRMING THAT SUCH CLAIMS
ARE PROPERTY OF THE BANKRUPTCY ESTATE, AND FOR RELATED RELIEF**

Tripp Scott, P.A. ("Tripp Scott"), through undersigned counsel, moves under 11 U.S.C.

§§ 350(b) and 105(a), Federal Rule of Bankruptcy Procedure 5010, and Local Rule 5010-1 to

reopen this bankruptcy case to obtain an order from this Court (a) precluding the Debtor, Peter

G. Herman ("Herman") from pursuing certain purported claims against Tripp Scott which

Herman concealed during the bankruptcy case and which directly contradict positions Herman

took, and testified to under oath, in the course of his bankruptcy case, or (b) alternatively,

determining that these claims are property of the estate that only the bankruptcy trustee, not

Herman, may prosecute.

**Preliminary Statement**

In 2012, Herman filed a bankruptcy case in this Court and fraudulently concealed a

multi-million dollar bonus that he anticipated receiving from his former-employer, the movant,

Tripp Scott. Herman fought with his bankruptcy trustee and primary creditor over the

significance of that concealment in discharge litigation that spanned more than a year and

culminated in a two-day trial. Throughout that time, and in sworn testimony before the Court,

Herman repeatedly took the position that the Tripp Scott had the sole authority and unfettered

discretion to award Herman a bonus of any amount, or none at all. Indeed, that position was the centerpiece of Herman's entire defense, which was premised on the theory that the bonus was not property of the estate, and thus did not need to be disclosed, because as of the petition date Tripp Scott had not yet exercised its complete discretion to award it. Beyond that, Herman, a licensed Florida attorney, advance the identical defense at his recent June 2018 bar trial, which concerned, *inter alia*, the same concealment by Herman that was at issue in the bankruptcy trial.[1] At that trial, Herman repeatedly testified that Tripp Scott bonuses were "completely discretionary" and therefore Herman did not make a knowingly false statement in violation of the Rules Regulating the Florida Bar by omitting the bonus on his bankruptcy schedules.

Herman's recent bar trial testimony cannot be reconciled with his extant demand to Tripp Scott for more bonus money, which demand is <u>directly opposed</u> to Herman's central position in the discharge litigation. Herman now claims that, actually, Tripp Scott did <u>not</u> have complete discretion to award him any bonus or none at all; in fact, Herman now claims that the $2.7 million bonus that Tripp Scott ultimately awarded is so offensively low that it is actionable in tort and breach of contract, and Herman has threatened to file an action against Tripp Scott under those theories if Tripp Scott does not accede to his payment demands. The inconsistencies between that position and Herman's positions taken in bankruptcy court and during his bar proceeding are glaring and irreconcilable. And Herman's threatened claims against Tripp Scott directly contradict other positions that he took before this Court in the discharge litigation, discussed in more detail below.

Herman's conduct—asserting claims that directly contradict his sworn testimony that was at the heart of his case in this Court <u>and</u> his defense against the bar complaint—must not go

---

[1] *Florida Bar v. Herman*, Case No. SC17-2050 (Fla.).

unchecked. As set forth below, this Court can and should reopen this case and order Herman to refrain from asserting any claims against Tripp Scott that contradict the sworn positions he took in the bankruptcy case and in the bar proceeding, under the penalty of contempt and appropriate sanctions. Failing that, the Court should reopen the case and confirm that any claims against Tripp Scott related to its decision surrounding the bonus—however frivolous those claims may be—have already been resolved or, if not, that such claims belong exclusively to Herman's bankruptcy estate and may be asserted, if at all, by the bankruptcy trustee.

## Background

### A.  Herman's bankruptcy case and the discharge litigation.

The story of this case is detailed in the Court's order denying Herman's discharge, entered in an adversary proceeding filed by Herman's chapter 7 trustee, Kenneth A. Welt, and primary creditor CIB Marine Capital LLC (the "Discharge Action"), as well as the district court's order on appeal affirming this Court's order denying discharge.[2] In the Discharge Action, the Court found that Herman filed intentionally misleading bankruptcy schedules in an attempt to conceal his interest in a substantial contingency fee, on account of which his then-employer, Tripp Scott, paid Herman a $2.7 million performance bonus shortly after Herman filed for bankruptcy protection on February 18, 2012 (the "Petition Date").

At the trial in the Discharge Action, Herman defended his non-disclosure by arguing that on the Petition Date, Tripp Scott had not yet collected the contingency fee or awarded the bonus. The linchpin of that argument was Herman's position that all bonuses were "awarded exclusively

---

[2] Adv. No. 12-01785-JKO, DE 115 (Findings of Fact and Conclusions of Law and Order denying Herman's discharge). The Court's Order is published as *In re Herman*, 495 B.R. 555 (Bankr. S.D. Fla. 2013). Citations to the Order are to "DE 115" and reference the pages of the Order as entered on the docket in the Discharge Action. Other citations to "DE _____" are to docket entries in Herman's main bankruptcy case. The district court's Order affirming this Court's decision is at docket entry 38 in *Herman v. CIB Marine Capital, LLC*, Case No. 0:13-cv-62251-KMM (S.D. Fla.).

by decision and at the sole discretion of Tripp Scott's compensation committee," which had "unfettered discretion" to decide Herman's compensation; therefore, because the contingency fee bonus was not yet awarded on the Petition Date, Herman claimed to believe he had no interest in the bonus to disclose.[3] Herman also testified that he personally decided that the bonus did not need to be disclosed after conducting his own legal research and concluding that the bonus was not property of the estate.[4]

After a two-day trial, this Court entered detailed findings and concluded that Herman's trial testimony was "not credible" and "unbelievable"; the Court found that Herman in fact anticipated that he would receive a substantial bonus and "affirmatively misled all parties and the Court" by failing to disclose it.[5] The Court specifically found that Herman "demanded, expected, and knew he would receive and did receive a huge bonus in mid-year 2012" and that he "purposefully did not disclose his interest in [the bonus] with fraudulent intent in an attempt to prevent his creditors, primarily CIB Marine and Trustee Welt, from discovering such interest so that he could keep his multi-million dollar bonus for himself and pay none of it to his bankruptcy estate or his creditors."[6] The Court entered an order denying Herman's discharge on August 6, 2013, which the district court, Chief Judge K. Michael Moore, affirmed on September 29, 2014.[7]

On October 17, 2013, after losing his discharge, Herman filed amended bankruptcy schedules listing the $2.7 million bonus as a "potential performance bonus" and claiming it as

---

[3] Trial Tr. at 114; DE 115 at 14. Relevant excerpts from the June 5, 2013 trial transcript are attached as Exhibit A to this Motion.

[4] Trial Tr. at 105; DE 115 at 27.

[5] DE 115 at 27, 68.

[6] *Id.* at 31.

[7] Case No. 0:13-cv-62251-KMM, DE 38.

exempt.[8] That amendment did not disclose any claims that Herman believed he held against Tripp Scott concerning the bonus or otherwise. The Trustee and Herman then engaged in litigation concerning Herman's claim of exemption in the previously-concealed bonus.

In December 2015, Herman voluntarily resigned from Tripp Scott, never complaining that he had been treated unfairly with respect to the bonus. In February 2016, Herman, the Trustee, and CIB entered into a global settlement. Tripp Scott was not a party to the settlement agreement or the litigation that produced it, and the settlement did not assign or otherwise deal with any claims that the estate or Herman might have against Tripp Scott. As part of the settlement, the Trustee's counsel agreed to reduce their fees from over $850,000 to $483,000, and CIB agreed to accept payment of $687,100.52 in full satisfaction of its $4,611,090.42 claim.[9] Herman's unsecured creditors received no distribution on $18,234 in allowed claims.[10] The Court issued its final decree closing the bankruptcy case on February 23, 2017.[11]

**B.  Herman's demand to Tripp Scott concerning the bonus.**

In February 2017, around the same time the bankruptcy case was closed, Herman issued a demand to Tripp Scott based on purported claims concerning the bonus, namely: (i) breach of contract, (ii) breach of fiduciary duty, (iii) promissory estoppel, and (iv) negligent or intentional misrepresentation. Pertinent here, Herman has indicated that he intends to assert claims against Tripp Scott on the premise that he was entitled to a much larger bonus and that Tripp Scott breached a fiduciary duty to Herman by giving him the too-low amount of only $2.7 million (the

---

[8] DE 232.

[9] DE 542.

[10] DE 571.

[11] DE 595.

largest bonus Tripp Scott has given going back at least 15 years from the trial date).[12] In connection with that theory, Herman accuses Tripp Scott of colluding with Trustee Welt to make a mid-year bonus of $2.7 million in exchange for the Trustee's agreement to not challenge Tripp Scott's distributing the balance of the underlying contingent fee among its employees. Additionally, and incredibly, <u>Herman blames his decision to conceal the bonus on Tripp Scott</u>, claiming that he failed to disclose the bonus on his bankruptcy schedules because he did not anticipate that it would be awarded mid-year. Herman asserts that Tripp Scott is liable for Herman's damages from the fallout in bankruptcy court resulting from the non-disclosure.

### C. Herman changes positions again, testifying during his bar trial that his bonuses at Tripp Scott were "solely discretionary" and that he had no enforceable right to a larger bonus amount.

After Herman made his initial demand to Tripp Scott, on November 16, 2017, the Florida Bar initiated a disciplinary proceeding against Herman based on his conduct during the bankruptcy case in the case of *Florida Bar v. Herman*, Case No. SC17-2050 (Fla.). The disciplinary proceeding was tried before the Honorable August A. Bonavita on June 21-26, 2018, while Herman's demand against Tripp Scott remained pending.[13] During that trial, Herman resumed his earlier position that he did nothing wrong because the decision to award a bonus was within Tripp Scott's exclusive discretion: Herman (and his counsel during opening argument) referred to the "discretionary bonus" or "solely discretionary bonus" or "completely discretionary bonus" dozens of times during the course of the trial. Herman also testified that "at

---

[12] DE 115 at 38.

[13] The Bar alleges that Herman violated Rules 3-4.2, 3-4.3 ("commission by a lawyer of any act that is unlawful or contrary to honesty and justice"), 4-3.3(a) ("make a false statement of fact or law to a tribunal"), 4-3.4(a), and 4-8.4(a).

the end of the day, it [the bonus] comes down to what the company decides."[14] Herman even testified that Chapter 7 trustee correctly acquiesced when Tripp Scott awarded the $2.7 million bonus (rather than a much larger amount that the trustee had demanded) because the trustee, according to Herman, "<u>knew state law did not confer a legal interest in that bonus to me, because it was discretionary</u>."[15] Herman denied that he had a "legal state court right and interest" in any larger bonus than that awarded in Tripp Scott's discretion.[16]

Thus, Herman's assertion that he has a claim against Tripp Scott for awarding a too-low bonus is a complete about-face from Herman's entire case in the Discharge Action <u>and</u> his defense in the pending disciplinary proceeding: Herman's thesis that the compensation committee had unfettered discretion to award a bonus in any amount is irreconcilable with Herman's alternative story that, actually, Tripp Scott was required to award a bonus much larger than $2.7 million, and that its failure to do so is actionable. Likewise, Herman's attempt to blame Tripp Scott for his decision to conceal the bonus from his creditors and Trustee Welt directly contradicts Herman's sworn testimony that <u>Herman himself</u> "made a decision" to omit the bonus from his schedules after conducting legal research; Herman testified that his decision to omit the bonus "wasn't a mistake."[17] Moreover, any suggestion that Herman would have disclosed the bonus if only Tripp Scott had not awarded it mid-year flies in the face of the central finding at the heart of this Court's Order in the Discharge Action: Herman "demanded, expected, <u>knew</u> he would receive and did receive a huge bonus in mid-year 2012." In short, the factual crux of Herman's threatened claims against Tripp Scott directly contradicts all of the factual positions

---

[14] June 21, 2018 Bar Trial Tr. p.181:6-8. Relevant excerpts from the June 2018 bar trial transcript are attached as <u>Exhibit B</u>.

[15] June 26, 2018 Trial Tr. p.68:17-21.

[16] *Id.* at 54:20-22.

[17] Trial Tr. at 114.

most central to Herman's defense maintained in the Discharge action for over a year <u>and</u> his defense currently pending in the disciplinary proceeding, including in sworn deposition testimony and live testimony under oath before this Court and Judge Bonavita.

<u>**Relief Requested and Basis for Relief**</u>

A party in interest may move to reopen a bankruptcy case to "administer assets" or for "other cause." 11 U.S.C. § 350(b). "Cause" under § 350(b) "casts a broad net" so that a bankruptcy court has discretion to reopen a bankruptcy case for any reason that "accords with the equitable nature" of bankruptcy proceedings. *In re Case*, 937 F.2d 1014 (5th Cir. 1991); *In re Rochester*, 308 B.R. 596, 600 (Bankr. N.D. Ga. 2004). Here, reopening Herman's bankruptcy case is appropriate to bar Herman from making good on his threat to take positions in another court that directly contradict the key positions he took under oath before this Court in the Discharge Action (and before another court in the disciplinary proceeding). In addition, or alternatively, the Court should determine that Herman's bonus-related claims were resolved in the course of the discharge action; and if not, the Court should determine that any such claims are property of the bankruptcy estate that may be asserted, if at all, only by the bankruptcy trustee and not by Herman.

A. **This Court has broad authority to remedy Herman's violation of his disclosure obligations and inconsistent position-taking by enjoining him from asserting the bonus-related claims against Tripp Scott, or granting other equitable relief.**

The Eleventh Circuit has explained that "Bankruptcy courts have broad powers to remedy violations of the mandatory duties" imposed on debtors under 11 U.S.C. § 521, which requires a debtor to file a schedule of assets and turn over all property of the estate to the bankruptcy trustee, among other things. *In re Failla*, 838 F.3d 1170, 1179 (11th Cir. 2016) (citing *In re Taylor*, 3 F.3d 1512, 1513 (11th Cir. 1993)). Those powers derive from bankruptcy courts'

statutory authority under 11 U.S.C. § 105(a) "to take any action that is necessary or appropriate to carry out the provisions" of the Bankruptcy Code and "broad authority to take any action that is necessary or appropriate 'to prevent an abuse of process.'" *Id.* at 1179 (citing *Marrama v. Citizens Bank of Mass.*, 549 U.S. 365 (2007)). Otherwise, debtors could "say one thing in bankruptcy court and do another thing in state court," "making a mockery of the legal system by taking inconsistent positions." *Id.* at 1178 (citing *In re Guerra*, 544 B.R. 707 (Bankr. M.D. Fla. 2016)).

In *Failla*, the court affirmed Judge Hyman's order, entered after granting a motion to reopen the bankruptcy case, compelling the debtors to refrain from opposing a state court foreclosure action in contradiction to the debtors' statement of intention under § 521(a)(2) filed in the bankruptcy case. On appeal, the debtors argued that the bankruptcy court's authority to remedy a violation of § 521(a)(2) was limited to lifting the automatic stay so that the foreclosure could proceed in state court. *Id.* at 1178-79. The court rejected that argument: "While a creditor may be able to invoke the doctrine of judicial estoppel in state court to force debtors to keep a promise made in bankruptcy court, its availability does not affect the statutory authority of bankruptcy judges to remedy abuses that occur in their courts." *Id.* at 1179. Thus, under *Failla*, a party facing a debtor that takes inconsistent positions may seek relief from the bankruptcy court, and is not limited to raising the issue in a subsequent non-bankruptcy forum.[18]  Indeed, the *Failla* court noted that bankruptcy courts "regularly exercise jurisdiction to tell parties what they can or

---

[18] In a decision published without the benefit of the Eleventh Circuit's ruling in *Failla*, this Court indicated that a debtor's post-bankruptcy inconsistent position-taking should be raised in the subsequent non-bankruptcy forum. *In re Kourogenis*, 539 B.R. 625, 631 (Bankr. S.D. Fla. 2015). The later decision in *Failla*, however, makes clear that the bankruptcy court indeed has authority to prevent a debtor from taking an inconsistent position post-bankruptcy, and need not defer to any other court.

cannot do in a non-bankruptcy forum." *Id.* (citing *In re Lapeyre*, 544 B.R. 719 (Bankr. S.D. Fla. 2016)). That is precisely the relief Tripp Scott seeks here.

As the *Failla* panel noted, the doctrine of judicial estoppel provides another basis for relief. In *Slater v. U.S. Steel Corporation*, 871 F.3d 1174 (11th Cir. 2017), the Eleventh Circuit reaffirmed that judicial estoppel is properly applied to prevent a debtor from enjoying the fruits of a claim intentionally concealed during his bankruptcy case. "The equitable doctrine of judicial estoppel is intended to prevent the perversion of the judicial process and protect its integrity by prohibiting parties from deliberately changing positions according to the exigencies of the moment." *Id.* at 1180 (citing *New Hampshire v. Maine*, 532 U.S. 742 (2001)) (quotation marks and brackets omitted). "Stated simply, the doctrine of judicial estoppel rests on the principle that 'absent any good explanation, a party should not be allowed to gain an advantage by litigation on one theory, and then seek an inconsistent advantage by pursuing an incompatible theory.'" *Id.* at 1181 (citing *Ryan Operations G.P. v. Santiam-Midwest Lumber Co.*, 81 F.3d 355 (3d Cir. 1996)). That concern—preventing deliberate changes of position according to the exigencies of the moment—is squarely implicated here.

In *Slater*, the Eleventh Circuit explained that a court may apply judicial estoppel to preclude a debtor from pursuing an undisclosed claim if the debtor: (1) took a position under oath in the bankruptcy proceeding inconsistent with his pursuit of the claim, and (2) intended to make a mockery of the judicial system. *Id.* at 1180. The second part of the test focuses on the debtor's motive: "judicial estoppel looks towards cold manipulation and not an unthinking or confused blunder." *Id.* at 1181 (citing *Johnson Serv. Co. v. Transamerica Ins. Co.*, 485 F.2d 164 (5th Cir. 1973)). In evaluating a debtor's motive, a court may consider the debtor's "level of sophistication, whether and under what circumstances the [debtor] corrected the disclosures,"

and "all the facts and circumstances of the particular case." *Id.* at 1185. The ultimate issue is whether the debtor actually intended to mislead the court and thus "manipulate the judicial system to his advantage." *Id.* at 1186.

*Failla* and *Slater* are both built on the well-recognized principle that bankruptcy courts have broad equitable authority to safeguard the dignity and efficacy of the bankruptcy process. The instant circumstances cry out for a swift and forceful application of that authority. To be clear, Tripp Scott disputes that Herman holds any claims against Tripp Scott related to the bonus or otherwise that are even remotely colorable. But if Herman genuinely believes that such claims exist, then he was required under § 521 to disclose them to the Trustee and to this Court. At a minimum, Herman should have disclosed the bonus-related claims in his Amended Schedules filed in October 2013, after the Court denied Herman's discharge and ruled that the bonus was property of the estate. Herman presumably chose not to disclose the bonus-related claims in that amendment because doing so would have prejudiced his position in the then-pending district court appeal; there, Herman was advancing arguments based on his alternative version of events in which Tripp Scott had absolute and unfettered discretion to determine the amount of Herman's bonus (consistent with the position Herman recently took during his bar trial, but directly contrary to the position Herman takes in his demand to Tripp Scott). Further, by intentionally omitting any bonus-related claims from his amended schedules, Herman successfully induced both CIB and the trustee's counsel to accept substantially reduced amounts in satisfaction of their respective claims. Now, Herman is trying to go back to the well for himself, without any remorse for those that he duped into settling under the premise that no additional bonus-related claims existed.[19] This is precisely the type of conduct that the Eleventh Circuit identified in *Slater* as

---

[19] Neither the Trustee nor CIB asserted in the bankruptcy case that the estate might hold claims against Tripp Scott arising from its decision-making process or the amount of the bonus, which says a lot about

warranting the application of judicial estoppel. *See Slater*, 871 F.3d at 1185 (judicial estoppel prevents debtor from pursuing a claim omitted from their bankruptcy schedules when the omission was "intended to mislead").

Although intentional concealment is bad enough, Herman's conduct is far more egregious and unseemly than a mere failure to disclose an asset in his schedules. As explained above, Herman's purported claims against Tripp Scott are based entirely on factual and legal positions that <u>directly contradict Herman's sworn representations at the heart of his defense in the Discharge Action</u>. Herman maintained for over a year, and testified to this Court, that Tripp Scott had unfettered discretion to determine Herman's compensation so that he had no rights or interest whatsoever in an anticipated bonus and thus nothing to disclose in his bankruptcy schedules. And Herman took the identical position as recently as June 2018, to defend his non-disclosure to the Florida Bar. Yet Herman claims in his demand to Tripp Scott that, actually, he was entitled to such a large bonus that Tripp Scott's decision to award him only $2.7 million is actionable. Amazingly, Herman also intends to seek damages against Tripp Scott by blaming his choice to conceal the bonus on Tripp Scott's decision to award the bonus mid-year. That position is a shameless reversal of Herman's sworn testimony at trial that he intentionally omitted the bonus from his schedules after conducting legal research and concluding (incorrectly) that the bonus was not property of the estate. Herman's new position also directly contradicts the Court's specific factual finding that Herman expected and knew he would be receiving a bonus mid-year, and fraudulently concealed those facts intending to keep the bonus himself.

---

the lack of any real merit in Herman's bonus-related claims. As Herman himself testified during the bar trial, "it's obvious that if they [the trustee] had that right [to proceed against Tripp Scott for a larger bonus than what was awarded], they certainly would have gone after [it.]" June 25 Trial Tr. p.153:1-8.

Under these circumstances, the Court should order Herman to refrain from asserting his frivolous claims against Tripp Scott under the penalty of contempt and sanctions.

**B. If the Court does not prevent Herman from asserting the bonus-related claims under the threat of direct sanctions, then the Court should nevertheless reopen the case and determine that the bonus-related claims were resolved in the Discharge Action; or, alternatively, that such claims are property of the estate that can be asserted by the trustee only, and not by Herman.**

If the Court declines to exercise its broad authority to prevent Herman from making a mockery of this Court and the bankruptcy process by taking positions diametrically opposed to those he took in the Discharge Action <u>and</u> the recent bar trial, Tripp Scott nevertheless requests that the Court reopen the case and determine that any claims related to Tripp Scott's decisions concerning the bonus were resolved in the underlying Discharge Action, or, alternatively, that such claims are property of Herman's bankruptcy estate, which only the bankruptcy trustee may prosecute. The Court can and should grant that relief because under 28 U.S.C. § 1334(e), "the bankruptcy court has exclusive jurisdiction over property of the bankruptcy estate, and over disputes regarding whether specific property is property of the estate." *In re Chesley*, 551 B.R. 663, 676 (Bankr. M.D. Fla. 2016) (citing *In re Marathe*, 459 B.R. 850, 854 (Bankr. M.D. Fla. 2011)). Administering estate assets, moreover, is one of the enumerated grounds for reopening a bankruptcy case. 11 U.S.C. § 350(b).

First, any issues concerning the adequacy of the $2.7 million bonus were resolved in the Discharge Action. In its Order denying Herman's discharge, this Court delved into the mechanics of Tripp Scott's compensation structure as it relates to the bonus. The Court observed that Tripp Scott's "Compensation Committee had the authority to determine the exact amount of the [Herman's] bonus from the $10 Million Fee within a range of reasonableness based upon the

factors ordinarily considered and applied by the Committee in making such determinations."[20] The Court found that before the $2.7 million bonus, Herman "was never awarded a single bonus in excess of one million dollars during his employment Tripp Scott," and that "the $2.7 million bonus award was by far the largest in relation to other Directors and was the largest bonus Tripp Scott had ever given out to any Director in [Herman's] fifteen years with the firm."[21] The Court also found that Tripp Scott, in awarding the bonus, had considered input from other directors at the firm as well as "the firm's performance metrics" that applied to all bonus determinations, and that the bonus "was based upon the Debtor's aggregate client generations, work revenue and status as a Director."[22]  The Court ultimately determined that Tripp Scott "had discretion to determine what amount, within a reasonable range, of the $10 Million Fee would be paid to [Herman] based upon his prepetition performance." In light of these findings, there can be no legitimate dispute that Tripp Scott's decision to award a $2.7 million bonus, based on the firm's established metrics, was well within the firm's "discretion to determine" the amount of the bonus "within a reasonable range."  Indeed, the Court specifically concluded in its Order denying Herman's discharge that a decision by Tripp Scott to award Herman "a bonus in the amount of zero dollars from the $10 Million Fee or a bonus <u>in an amount far short of the $2.7 million that was awarded</u>" could theoretically have given rise to a claim against Tripp Scott—thus determining implicitly, if not expressly, that the $2.7 million amount Tripp Scott actually <u>did</u> chose to award is not actionable.[23]

---

[20] DE 115 at 17.

[21] *Id.* at 38.

[22] *Id.* at 40-41.

[23] *Id.* at 54.

Regarding the property of the estate issue: as a practical matter, any attempt to resolve Herman's demand to Tripp Scott without first resolving these issues will be frustrated by the likelihood that Herman's bankruptcy trustee could claim that the bonus-related claims belong to the bankruptcy estate, exposing Tripp Scott to potential double liability. Substantively, the Court should have no problem determining that the bonus-related claims are property of the estate because the Court's Findings of Fact and Conclusions of Law and the applicable provision of the Bankruptcy Code compel that conclusion: because the bonus is property of the estate, any claim arising from Tripp Scott's failure to award the bonus would be property of the estate, as would be any claims based on an allegation that the amount of the bonus was inadequate. Indeed, the Court expressly observed in its Order denying Herman's discharge that a decision by Tripp Scott to award Herman a bonus "in the amount of zero dollars" would have given rise to "the estate's claim for unjust enrichment."[24]

Further, because Herman failed to schedule any claims against Tripp Scott related to the bonus, any such claims remained property of the estate after the bankruptcy case was closed. Under 11 U.S.C. § 554(c), "only scheduled property that has not been administered is abandoned" back to the debtor when a case is closed. 4 COLLIER ON BANKRUPTCY 521.06[4] (16th ed.) (emphasis added). Further, the Court-approved settlement agreement does not bar the relief Tripp Scott is seeking because Tripp Scott was not a party to that agreement and no claims against Tripp Scott were assigned or otherwise dealt with in the agreement. So, the claims at issue remain property of the estate which only the bankruptcy trustee may administer. Thus, in the event the Court declines to bar Herman from pursuing the bonus-related claims (or determines that this issue has not already been resolved), the Court should, at minimum, reopen

---

[24] *Id.* (emphasis added).

the case and enter an order confirming that those claims are property of the bankruptcy estate. To the extent the Court determines that granting the any of the foregoing relief requires the filing of an adversary proceeding under Rule 7001, Tripp Scott requests that the bankruptcy case be reopened so that Tripp Scott may file one.

## Conclusion

For all of the reasons set forth above, the Court should enter an order reopening the case and enjoining Herman from pursuing the bonus-related claims under penalty of contempt, or, alternatively, enter a judgment determining that the claims are property of the estate which only the Trustee may prosecute. Any other outcome would countenance Herman's blatant disdain for the bankruptcy process and disregard for the dignity of this Court.

**WHEREFORE**, Tripp Scott respectfully requests that the Court grant the relief requested herein and such other and further relief as the Court may deem appropriate.

Dated: August 17, 2018.

[Signature block and Certificate of Service follows]

Respectfully submitted,

GENOVESE JOBLOVE & BATTISTA, P.A.
100 Southeast 2nd Street, 44th Floor
Miami, Florida  33131
Telephone:  305.349.2300
Facsimile:  305.349.2310

By:    /s/ Michael A. Friedman
       John H. Genovese, Esq. / FBN 280852
       Michael A. Friedman, Esq. / FBN 71828
       Email: mfriedman@gjb-law.com

       and

**GORDON REES SCULLY MANSUKHANI**
100 SE Second Street, Suite 3900
Miami, FL 33131

 s/  Ronald G. Neiwirth
Ronald G. Neiwirth, Esq.
Florida Bar No. 152175
rneiwirth@grsm.com
Robin Taylor Symons, Esq.
Florida Bar No. 356832
rsymons@grsm.com

*Attorneys for Tripp Scott, P.A.*

## CERTIFICATE OF SERVICE

I certify that the foregoing *Motion to Reopen Case, for Entry of an Order Precluding Peter Herman from Pursuing Claims that He Concealed during the Bankruptcy Case, and for an Order Confirming that such Claims are Property of the Bankruptcy Estate,* was served via CM/ECF, electronic mail, and/or first-class postage-prepaid U.S. Mail to all parties on the attached service list on this 17th day of August, 2018.

/s/ Michael A. Friedman

17

## SERVICE LIST

*Via Email*

Andrew T. Lavin
Lavin Law Group, P.A.
alavin@lavinlawyers.com
*Attorneys for Debtor Peter Herman*

*Via U.S. Mail*

Andrew T. Lavin
Lavin Law Group, P.A.
2670 NE 215th Street
Miami, Florida 33180
*Attorneys for Debtor Peter Herman*

*Via CM/ECF Notification*

Annette Urena Tucker on behalf of Trustee Kenneth A. Welt aut@trippscott.com,
iah@trippscott.com

Bart A Houston on behalf of Defendant Peter G Herman bhouston@thlglaw.com,
dschena@thlglaw.com;bhouston@ecf.inforuptcy.com

Bart A Houston on behalf of Interested Party Bart Alan Houston bhouston@thlglaw.com,
dschena@thlglaw.com;bhouston@ecf.inforuptcy.com

Chad P Pugatch, Esq. on behalf of Debtor Peter G Herman cpugatch.ecf@rprslaw.com

Charles W Throckmorton, Esq on behalf of Creditor Mayback & Hoffman, P.A.
cwt@kttlaw.com, lf@kttlaw.com;ycc@kttlaw.com

Curtis Carlson on behalf of Creditor Farhan Naseer carlson@carlson-law.net, service@carlson-law.net

Dennis J LeVine, Esq on behalf of Creditor JPMorgan Chase Bank, N.A.
tbyington@kelleykronenberg.com

Fernando J Menendez on behalf of Plaintiff Kenneth A Welt fernando.menendez@gray-robinson.com, jennifer.phillips@gray-robinson.com

Fernando J Menendez on behalf of Trustee Kenneth A Welt fernando.menendez@gray-robinson.com, jennifer.phillips@gray-robinson.com

Jeffrey M Ostrow on behalf of Interested Party Kopelowitz Ostrow P.A. ostrow@kolawyers.com

John H Genovese, Esq on behalf of Other Professional Tripp Scott, P.A. jgenovese@gjb-law.com, hburke@gjb-law.com;gjbecf@gjb-law.com

Joseph M McCandlish on behalf of Creditor HSBC BANK USA, N.A jmccandlish@weltman.com, colnationalecf@weltman.com

Kenneth A Welt
fl10@ecfcbis.com;pacerfilings@gmail.com;kaw@trustesolutions.net;court@trusteeservices.biz

Kenneth S Jannette on behalf of Plaintiff FIA Card Services, N.A. kenj@w-legal.com

Kimberly Salamone on behalf of Trustee Kenneth A Welt ksalamone@ntmlawfirm.com, atty_mehdipour@bluestylus.com;cm_ecf_service@ntmlawfirm.com

Kristopher E Pearson on behalf of Intervenor-Plaintiff Kenneth A Welt kpearson@stearnsweaver.com, mmasvidal@stearnsweaver.com;bank@stearnsweaver.com;rross@stearnsweaver.com;dillworthcdp@ecf.epiqs ystems.com;larrazola@stearnsweaver.com;cgraver@stearnsweaver.com
Kristopher E Pearson on behalf of Trustee Kenneth A Welt kpearson@stearnsweaver.com, mmasvidal@stearnsweaver.com;bank@stearnsweaver.com;rross@stearnsweaver.com;dillworthcdp@ecf.epiqs ystems.com;larrazola@stearnsweaver.com;cgraver@stearnsweaver.com

Kristopher E Pearson on behalf of Plaintiff CIB Marine Capital, LLC kpearson@stearnsweaver.com, mmasvidal@stearnsweaver.com;bank@stearnsweaver.com;rross@stearnsweaver.com;dillworthcdp@ecf.epiqs ystems.com;larrazola@stearnsweaver.com;cgraver@stearnsweaver.com

Kristopher E Pearson on behalf of Creditor CIB Marine Capital, LLC kpearson@stearnsweaver.com, mmasvidal@stearnsweaver.com;bank@stearnsweaver.com;rross@stearnsweaver.com;dillworthcdp@ecf.epiqs ystems.com;larrazola@stearnsweaver.com;cgraver@stearnsweaver.com

Michael Foster on behalf of Special Counsel Nicole Testa Mehdipour mcf@trippscott.com, iah@trippscott.com

Michael A Friedman on behalf of Other Professional Tripp Scott, P.A. mfriedman@gjb-law.com, gjbecf@gjb-law.com;jsardina@gjb-law.com

Neil P Linden on behalf of Trustee Kenneth A Welt neil.linden@gray-robinson.com, elena.pathman@gray-robinson.com

Neil P Linden on behalf of Intervenor-Plaintiff Kenneth A Welt neil.linden@gray-robinson.com, elena.pathman@gray-robinson.com

Nicole Testa Mehdipour on behalf of Trustee Kenneth A Welt nicolem@ntmlawfirm.com, ksalamone@ntmlawfirm.com;cm_ecf_service@ntmlawfirm.com;atty_mehdipour@bluestylus.com;cmecfservice @gmail.com

Office of the US Trustee USTPRegion21.MM.ECF@usdoj.gov Robert A. Schatzman, Esq. on behalf of Trustee Kenneth A Welt robert.schatzman@gray-robinson.com, lauren.rome@gray-robinson.com;Amador.Ruiz-Baliu@gray-robinson.com

Robert A. Schatzman, Esq. on behalf of Plaintiff Kenneth A Welt robert.schatzman@gray-robinson.com, lauren.rome@gray-robinson.com;Amador.Ruiz-Baliu@gray-robinson.com

Robert A. Schatzman, Esq. on behalf of Plaintiff Kenneth Welt robert.schatzman@gray-robinson.com, lauren.rome@gray-robinson.com;Amador.Ruiz-Baliu@gray-robinson.com

Robert A. Schatzman, Esq. on behalf of Intervenor-Plaintiff Kenneth A Welt robert.schatzman@gray-robinson.com, lauren.rome@gray-robinson.com;Amador.Ruiz-Baliu@gray-robinson.com Zana Michelle Scarlett on behalf of U.S. Trustee Office of the US Trustee Zana.M.Scarlett@usdoj.gov

# **<u>EXHIBIT A</u>**

1              UNITED STATES BANKRUPTCY COURT
                SOUTHERN DISTRICT OF FLORIDA
2

3   IN RE:                        CASE NO. 12-13989-JKO

4

    PETER G. HERMAN,
5            Debtor.
    _____/
6   CIB MARINE CAPITAL, LLC,

7            Plaintiff,
    vs.                           ADV. NO. 12-1785-JKO
8
    PETER G. HERMAN,
9
             Defendant.
10  _____/

11                    VOLUME I

12                     TRIAL

13                  June 5, 2013

14         The above-entitled cause came on for hearing

15  before the  HONORORABLE JOHN K. OLSON, one of the Judges

16  in  the  UNITED STATES BANKRUPTCY COURT,  in and for the

17  SOUTHERN  DISTRICT  OF FLORIDA, at 299 E. Broward Blvd.,

18  Fort Lauderdale, Broward County, Florida on June 5, 2013,

19  commencing at or about 9:30 a.m., and the following

20  proceedings were had.

21

22

23                  Reported By:
              Cheryl L. Jenkins, RPR, RMR and
24                 Margaret Franzen

25

Page 105

1    opportunity to deal with that specific defense as

2    we would have, which would have been to depose

3    Mr. Houston, assuming it was Mr. Houston that

4    provided the information, the witness had other

5    counsel as well, but -- so I think it's

6    inappropriate.

7              THE COURT:  Don't go down that road,

8    Mr. Houston.

9              MR. HOUSTON:  Understood, Judge.  I'll

10   refrain from that line of questioning.

11   BY MR. HOUSTON:

12       Q    So, Mr. Herman, did you do some independent

13   investigation or legal analysis as it relates to the

14   property of the estate issue on the 2012 bonus?

15       A    I did.

16       Q    And how did you do that research?

17       A    I looked at cases, and I came to the

18   conclusion, based on what I read, that any bonus that

19   I would receive would not be property of the estate.

20       Q    Okay.  So let me ask you to look at the

21   same exhibit, Exhibit 12, and we're going to flip

22   over to Schedule I, which was on Page 16, I believe.

23       A    Exhibit 16 or Page 16?

24       Q    No, it's Exhibit 12, but Page 16 --

25       A    Okay.

Page 114

1    you did, you came to the conclusion that you did not

2    need to list a contingent bonus, contingent

3    reasonably expected income in Schedule I for the

4    fees -- for the bonus that would be generated from

5    SML and Home Depot; correct?

6              You made an intentional decision to do

7    that?

8        A    On February 18th I didn't -- I didn't feel

9    that I had an enforceable, unenforceable, contingent

10   or otherwise interest in any of that money.

11       Q    So your answer is you made an intentional

12   decision not to schedule it?

13       A    I made a decision of what I put in here by

14   what's indicated in here.

15       Q    My point is, it wasn't by negligence or by

16   omission --

17       A    Yeah, it ---

18       Q    -- it was an intentional -- can I finish?

19       A    Sure.

20       Q    It was an intentional decision that you

21   made; correct?

22       A    It wasn't a mistake.

23       Q    It was not a mistake?

24       A    No.

25       Q    Now, would you turn to Exhibit 12, the

# EXHIBIT B

Judge August Bonavita
June 21, 2018

1                    IN THE SUPREME COURT OF FLORIDA
                         (Before a Referee)
2
                        CASE NO.:  SC17-2050
3

4    THE FLORIDA BAR,

5                   Complainant,

6           -vs-

7
     PETER G. HERMAN,
8
                    Respondent.
9        _____/

10
                            -  -  -
11

12
         HEARING BEFORE THE HONORABLE AUGUST A. BONAVITA
13

14
                     Thursday, June 21, 2018
15                   9:30 a.m. - 4:50 p.m.

16

17

         PALM BEACH COUNTY COURTHOUSE, COURTROOM 4C
18                   205 North Dixie Highway
                    West Palm Beach, Florida
19

20

21
                  Stenographically Reported By:
22                   SARA CZAJKOWSKI, FPR
                 Florida Professional Reporter
23

24

25

Judge August Bonavita
June 21, 2018                                    181

```
 1          A.    It depends.

 2          Q.    On what?

 3          A.    How the factors were taken into consideration.

 4   Like I put in my e-mail, if he did it out of

 5   profitability analysis, which certainly I didn't expect

 6   them to consider.  That's exactly what it is.  You can

 7   write all the e-mails all day and night, but at the end

 8   of the day, it comes down to what the company decides,

 9   and that's why these e-mails ended after about a half a

10   dozen of them in the beginning of January, in the

11   beginning of the fiscal year.  Plus, the money wasn't

12   even in the bank.

13          Q.    Did you voluntarily leave Tripp, Scott?

14          A.    I did, but I would qualify that in some

15   respects, if you would let me answer.

16               MR. ROTHMAN:  You can answer, Peter.

17               MS. PEARSALL:  He can't answer for me.

18               MR. ROTHMAN:  You can finish your answer.

19               MS. PEARSALL:  I'm doing the direct.

20               THE COURT:  Hold on.

21               MR. ROTHMAN:  He just said I can qualify that

22          if you allow me to, and he can.  He can answer a

23          question any way he wants to answer a question.

24               THE COURT:  At this point, I'm going to ask

25          that Mr. Herman just keep his answers in response to
```

1              IN THE SUPREME COURT OF FLORIDA

2                 CASE NO.:  SC17-2050

3     THE FLORIDA BAR,

4              Complainant,

5              -vs-

6     PETER G. HERMAN,

7                 Respondent.

8        _____/

9

10                         -  -  -

11

12       HEARING BEFORE THE HONORABLE AUGUST A. BONAVITA

13

14                    Monday, June 25, 2018
                      9:30 a.m. - 5:00 p.m.
15

16

17

18       PALM BEACH COUNTY COURTHOUSE, COURTROOM 4C
                   205 North Dixie Highway
19                 West Palm Beach, Florida

20

21

22

23             Stenographically Reported By:
                   SARA CZAJKOWSKI, FPR
               Florida Professional Reporter
24

25

Judge August Bonavita
June 25, 2018                                          153

```
 1        A.   That's right, rather than proceeding on what

 2   was a supposed right of mine to 5.2 million, that's what

 3   they contended in the bankruptcy case.  But here, it's

 4   obvious that if they had that right, they certainly would

 5   have gone after the 5.2 million, based on Mr. Welt's

 6   testimony in this very proceeding that it's his

 7   obligation to get as much as he can.  So, he tried to get

 8   the --

 9             MS. PEARSALL:  Objection, calls for

10        speculation.

11             THE COURT:  Overruled.

12   BY MR. ROTHMAN:

13        Q.   So, number two is not here, but it's in the

14   main book, but the reason that's even mentioned here on

15   number 22 is it is the initial complaint filed in the

16   adversary proceeding on July 19, 2012.  Was that the

17   first time you were aware of the allegation of

18   concealment and false oath?

19        A.   Yes, sir.

20        Q.   What was your reaction?

21        A.   Shocked.

22        Q.   A few months later, number 23.

23        A.   But that adversary proceeding, I was shocked

24   because, number one, the trustee did not file the

25   adversary proceeding.  The trustee did not intervene
```

1              IN THE SUPREME COURT OF FLORIDA

2                   CASE NO.:  SC17-2050

3

THE FLORIDA BAR,

4                   Complainant,

5              -vs-

6

7   PETER G. HERMAN,

8                   Respondent.
      _____/

9

10                      -   -   -

11

12      HEARING BEFORE THE HONORABLE AUGUST A. BONAVITA

13

14
                   Tuesday, June 26, 2018
15                 9:30 a.m. - 4:05 p.m.

16

17

18      PALM BEACH COUNTY COURTHOUSE, COURTROOM 4C
                 205 North Dixie Highway
19               West Palm Beach, Florida

20

21

22
             Stenographically Reported By:
23                 SARA CZAJKOWSKI, FPR
             Florida Professional Reporter
24

25

 1  justify his position, justify it or -- it was his

 2  position that, you know, the firm took a risk with the

 3  Home Depot case, and, therefore, maybe the numbers should

 4  be different for other people.  But that's -- yes, that's

 5  what it says.

 6       Q.   So, when you filed your bankruptcy petition on

 7  February 18, 2012, you knew you were getting an enormous

 8  return on your investment, correct?

 9       A.   No, that's not true.  Again, I want to be

10  clear.  People are talking about bankruptcy schedules

11  very loosely here.  There are two areas that we've been

12  discussing.  Schedule B is the schedule -- or is the

13  section on the schedule that talks about a property right

14  or interest, which is dictated by state law, okay?

15  People like to conflate that with schedule I.  Schedule I

16  is just a snapshot of whatever your income may be or

17  could be or what might happen in the future.  Even

18  trustee Welt said in this courtroom he didn't even pay

19  attention to it.  So, I want to clear that up, because I

20  think that's an important distinction.  My writing

21  e-mails doesn't give me a legal state court right and

22  interest.

23       Q.   Mr. Pozzuoli was the president of Tripp, Scott

24  in 2011?

25       A.   I have answered that, yes.

1   speculation.

2        THE COURT:  Overruled.

3        THE WITNESS:  It's in the e-mail --

4        THE COURT:  Overruled.

5        THE WITNESS:  -- that he demanded that they set

6   aside the $5.2 million, go ahead and make whatever

7   distribution they want, but he wanted $5.2 million,

8   and that was before the adversary proceeding ever

9   began.  Just to set it aside.  No allocations, no

10  nothing, just whether it could be property of the

11  estate or not.  And so, Tripp, Scott, as you see in

12  the e-mails, Exhibit 21, told them what their

13  practices were about their discretionary nature of

14  their bonuses, and they went about their business.

15       MS. PEARSALL:  Objection, narrative.

16       THE COURT:  Overruled.

17       THE WITNESS:  The trustee never followed

18  through with his demand of the $5.2 million.  He knew

19  that, because he did not -- he knew state law did not

20  confer a legal interest in that bonus to me, because

21  it was discretionary.  So, he waited until it was

22  discretionarily done, and between that time, between

23  April and September, his testimony -- it was his

24  testimony.  You asked him if he cut a deal, and

25  that's what happened, that September 11th meeting