**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**FORT LAUDERDALE DIVISION**

In re:

Case No.: 12-13989-JKO

PETER G. HERMAN

Chapter 7

Debtor.

## DEBTOR'S RESPONSE TO TRIPP SCOTT P.A.'S MOTION TO REOPEN

Debtor, Peter G. Herman ("Herman"), hereby files this Response to Tripp Scott, P.A.'s ("Tripp Scott") *Motion to Reopen Case, for entry of an Order Precluding Peter Herman from Pursuing claims that he Concealed during the Bankruptcy case, and for an Order Confirming that such Claims are Property of the Bankruptcy Estate, and for Related Relief* (the "Motion to Reopen"). In support thereof, Herman states as follows:

### PRELIMINARY STATEMENT

Using the backdrop of Herman's pending proceedings before the Florida Bar, Tripp Scott has boldly sought to gain leverage against Herman in an unrelated employment dispute by filing the pending Motion to Reopen Herman's bankruptcy case. As the vehicle to do so, among many false accusations, Tripp Scott falsely represents to this Court that Herman has somehow changed his testimony on material issues since testifying before this Court and in the Florida Bar proceedings. Such an accusation is entirely false, extremely reckless and without any record support. Indeed, Tripp Scott's representatives testified before this Court entirely consistent with Herman's testimony, and Herman has never deviated from said testimony before any Court. Tripp Scott is well aware of this fact, but proceeds without any basis, irrespective of reality, all

done in an effort to intimidate and extort Herman into settling claims he possess against Tripp Scott based on his 30 year plus tenure with the firm.

Nevertheless, through its reckless filing, it is Tripp Scott's and it insurance carrier's transparent hope that Herman will fear the potential wrath of this Court and the threat of another harshly worded Order being entered against him.[1] Through the suggestion of such fear, Tripp Scott and its insurance carrier lawyer take aim at coercing Herman to cede to certain of Tripp Scott's unreasonable demands. In fact, Tripp Scott's other counsel who co-authored the subject motion, Michael Friedman, has previously clearly indicated to Herman his express opinion of his personal impression that Herman could not succeed on *any matter* before this Court as, per Mr. Friedman's own perception, this Court harbors a bias against Herman. Seeking to capitalize on this Court's perceived bias against Herman, Tripp Scott not only strategically timed its efforts with the imminent ruling in Herman's Florida Bar matter, but Mr. Friedman also sent a cover letter to Herman urging settlement discussions based on the threat of this Motion and in advance of any hearing on the Motion before this Court. *See* Exhibit A (Mr. Friedman's Cover-letter accompanying Motion to Reopen).

Again, such despicable tactical maneuvering by Tripp Scott is done for a sole ulterior purpose: to hopefully gain leverage to force Herman to capitulate to unreasonable demands in the unrelated employment dispute between him and Tripp Scott. As will be illustrated below, however, the circumstances and facts surrounding this ill-conceived exercise underscores Tripp Scott's desperate bad faith efforts to escape what is destined to be an otherwise uncomfortable employment related litigation against the firm. Such discomfort, however, no matter how embarrassing or real, should never promote abuse of the judicial system to achieve Tripp Scott's

---

[1] Attorney Neiworth, who co-authored the subject Motion is an attorney hired by Tripp Scott's insurance carrier to defend them in employment related claims.

secondary motivations. For these reasons, Herman upon prevailing will be seeking the imposition of sanctions against Tripp Scott and its counsel pursuant to Bankruptcy Rule 9011, and this Court's inherent authority, for their frivolous bad faith filing of the Motion to Reopen.

## MOTION TO REOPEN

1. Section 350(b) of the Bankruptcy Code provides that a case may only be opened to administer assets, accord relief to the debtor, or for other cause. See 11 U.S.C. § 350(b). The reopening of a bankruptcy case is governed by Federal Rule of Bankruptcy Procedure 5010, which provides that "[a] case may be reopened on a motion of the debtor or other party in interest pursuant to 11 U.S.C. § 350(b)." A party in interest is defined to include the debtor, the trustee, a creditors' committee, an equity security holders' committee, a creditor, an equity security holder, or an indenture trustee. 11 U.S.C. §1109. Tripp Scott meets none of these classifications and, thus, has no standing to even file the Motion to Reopen.

### *Tripp Scott Lacks Standing as They Are Not a Party In Interest in this Case*

2. Tripp Scott, never before having entered an appearance as a party in interest in this case, seeks to reopen the case solely to obtain an advantage in their defense of employment related claims held against it by Herman. Aside from the unavailability of the remedy which they seek, Tripp Scott simply has no standing to pursue the Motion to Reopen. The case at bar is analogous to In re Miller, 347 B.R. 48 (Bankr. S.D. Tex. 2006). In Miller, the court held that a party being sued by a debtor, or a debtor of a debtor, was not a party-in-interest and therefore had no standing to object to a Chapter 7 trustee's motion to reopen a case to administer assets. *Id.* at 51. While acknowledging that the list is non-exclusive, the court noted that, like Tripp Scott

here, no entity in that list is in any way similar to a debtor of a debtor. *Id.* at 52. Like the entity in Miller, Tripp Scott's only relationship to this case is that Herman asserts that Tripp Scott should pay money to Herman, in this case for employment related claims. *See id.* ("Giving [the debtor of the debtor] a voice in whether [the trustee] can sue. . .is a very strange idea, a little like putting the fox in charge of the hen house. The Court sees no authority for that in the Bankruptcy Code.").

3.     Tripp Scott is neither a debtor, a creditor of Herman, nor a trustee. Indeed, when Herman's case was closed based on the settlement of the parties, Tripp Scott received notice of such dismissal and the settlement, yet Tripp Scott never attempted to intervene at that juncture or in the 2.5 years since dismissal. Tripp Scott is hard pressed to suggest that it is a party in interest at this stage of the long-closed proceedings.

4.     As an aside, Tripp Scott may attempt to argue that it maintains constitutional standing, as opposed to standing established by statute. But, such pursuit would also fail. Absent a showing of actual or imminent injury, which Tripp Scott has not and cannot establish, constitutional standing does not exist. See, e.g., In re Odin Demolition & Asset Recovery, LLC, 544 B.R. 615, 627 (Bankr. S.D. Tex. 2016).

5.     For these reasons alone, Tripp Scott should have never filed the Motion to Reopen. Said Motion should be Dismissed and Denied and sanctions should be imposed.

## *Tripp Scott Lacks Standing because it Seeks an Impermissible Advisory Opinion*

6.     In addition to the lack of statutory and constitutional standing, Tripp Scott also lacks standing as it impermissibly seeks an advisory opinion of this Court. In essence, Tripp Scott seeks an interpretation from this Court regarding its FFCCL that Tripp Scott believes *might* impact a lawsuit by Herman.

7.     To this end, and "as a corollary to the standing requirement, Article III of the constitution requires that federal courts not render advisory opinions." Alafyouny v. Chertoff, 2006 WL 1581959, at n.5 (N.D. Tex. May 19, 2006); Flast v. Cohen, 392 U.S. 83, 95 (1968) ("[N]o justiciable controversy is presented when the parties seek adjudication of . . . an advisory opinion."). In other words, "[t]he purpose of the standing doctrine is to ensure that courts do not render advisory opinions rather than resolve genuine controversies between adverse parties." Lujan v. Defenders of Wildlife, 504 U.S. 555, 598 n.4 (1992) (Blackmun, J. dissenting); United States Nat'l Bank v. Indep. Ins. Agents of Am., 508 U.S. 439, 446 (1993) (noting that federal courts have no power to render advisory opinions).

8.     Simply put, it is well settled law that federal courts shall not give advisory opinions. Brown & Root Braun v. Bogan, 54 Fed. App'x 542, 552 (3d Cir. 2002) ("The oldest and most consistent thread in the federal law of justiciability is that federal courts will not give advisory opinions.") (quoting Coffin v. Malbern Fed. Sav. Bank, 90 F.3d 851, 853 (3d Cir. 1996)).

9.     Distilling Tripp Scott's request to its core (outside of its secondary motivations), Tripp Scott seeks an opinion from this Court that Herman cannot lodge certain claims against the firm in an employment lawsuit. Granting such relief, however, would effectively amount to an impermissible advisory opinion. In re Canyon Port Holdings, LLC, 2013 WL 6002134 (S.D. Tex. Nov. 12, 2013) (citing Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 101 (1998)). Tripp Scott simply has no standing, and its pursuit of an impermissible advisory opinion is further evidence that no cause or basis exists to reopen the bankruptcy case.

10.    Again, Tripp Scott is not a creditor of Herman, and has never been a party-in-interest. Until now, despite having knowledge and notice throughout the pendency of the

bankruptcy proceedings, Tripp Scott never sought to intervene to assert rights or gain any level of clarity of any of this Court's prior rulings. Tripp Scott, therefore, has no rights to suddenly intervene to seek entry of an order that, in Tripp Scott's mind, might pressure Herman into capitulating to their unreasonable demands. At most, Tripp Scott seeks nothing more than an impermissible advisory opinion, but such advisory opinion is not appropriate and this Court does not have jurisdiction or authority to make such a ruling.

11.     The Motion to Reopen was (and remains) frivolous, and aimed solely at harassing and intimidating Herman.

### *Even if Standing Somehow Exists, Cause to Reopen Does Not*

12.     As stated above, a bankruptcy case may only be reopened to administer assets, accord relief to the Debtor, or for other cause. 11 U.S.C. § 350(b). Tripp Scott does not seek to reopen this case to administer assets or accord relief to Herman. Tripp Scott, therefore, only seeks to reopen this case for "other cause", where no cause exists.

13.     Unfortunately, the Bankruptcy Code does not define "other cause" in terms of a motion to reopen a case. Rather, bankruptcy courts have noted that the phrase "other cause" gives broad discretion when determining if a case should be reopened, and that discretion depends on the circumstances of the individual case and the equitable nature of all bankruptcy court proceedings. See, e.g., Bell v. Bell Family Trust, 575 Fed. App'x 229, 232 (5th Cir. 2014); see also In re All. Consulting Group LLC, 2018 WL 1393740, at *4 (Bankr. S.D. Miss. Mar. 19, 2018) ("Reopening 'for other cause' is within the discretion of the bankruptcy court, depending on the circumstances of the particular case and in accordance with 'the equitable nature of all bankruptcy court proceedings.'")(quoting In re Case, 937 F.2d 1014, 1018 (5th Cir. 1991)).

14.     As a roadmap for ascertaining "other cause", however, the United States Bankruptcy Court for the Southern District of New York has aptly set forth the following equitable factors when determining if cause exists under 11 U.S.C. § 350(b):

i.      The length of time that the case was closed;

ii.     Whether a non-bankruptcy forum has jurisdiction to determine the issue which is the basis for reopening the case;

iii.    Whether prior litigation in the bankruptcy court determined that a state court would be the appropriate forum;

iv.     Whether any parties would suffer prejudice should the court grant or deny the motion to reopen;

v.      The extent of the benefit to the debtor by reopening; and

vi.     Whether it is clear at the outset that no relief would be forthcoming to the moving party.

In re Easley-Brooks, 487 B.R. 400, 407 (Bankr. S.D.N.Y. 2013).

## *Factor One (Length of Time)*

15.     The first factor used to analyze whether "other cause" exists to reopen a closed case examines the "length of time that the case was closed." In re Easley-Brooks, 487 B.R. at 407.

16.     Not only does the burden fall squarely on Tripp Scott to substantiate that "other cause" exists to reopen this closed case, but "[t]he longer the time between the closing of the estate and the motion to reopen,…the more compelling the reason for reopening the estate should be." In re All. Consulting Group LLC, 2018 WL 1393740, at *4 (Bankr. S.D. Miss. Mar. 19, 2018).

17. Here, there is not only a lack of any legitimate or compelling "need" to reopen this closed case, but this Court entered a final order in the adversary proceeding nearly five years ago, and a final order approving the settlement and dismissing the case nearly 2.5 years ago. At all times, Tripp Scott was aware of and was noticed as to all relevant proceedings, including each of the foregoing entries of orders. Tripp Scott has also long been aware of the claims asserted by Herman against the firm stemming from his departure, yet has done nothing until now, during the pendency of Herman's Bar proceedings when a ruling is imminently expected to be rendered.

18. Needless to say, if Tripp Scott genuinely needed or desired clarification of any of this Court's Orders (rather than simply using this court for the improper purpose of pressuring Herman to capitulate to demands) it could have done so years ago as it knew of the claims evidenced by the tolling agreement that had been in place for years. Equitably, the length of time that the case has been closed weighs against allowing Tripp Scott – a non-party in interest – to reopen the case.

19. Tripp Scott is represented by a very capable law firm specializing in bankruptcy law, and said firm has represented Tripp Scott since the onset of Herman's case being initiated more than six years ago. Tripp Scott also has attorneys within its own firm familiar with the intricacies of bankruptcy law.

20. Again, had a legitimate purpose for the Motion to Reopen existed, there would have been no need to wait until now to seek to reopen this case; any redress should have been sought prior to the closing of the bankruptcy case. Tripp Scott's inexplicable and inexcusable delay must weigh decisively against reopening the bankruptcy case; yet, Tripp Scott proceeds undeterred.

### *Factor Two (Existence of Another Forum)*

21.     The next guiding factor used to analyze whether "other cause" exists to reopen a closed case is whether "a non-bankruptcy forum has jurisdiction to determine the issue which is the basis for reopening the case." In re Easley-Brooks, 487 B.R. at 407.

22.     Here, Tripp Scott essentially wants this Court to ender an advisory opinion regarding an affirmative defense (i.e., judicial estoppel) that it would *potentially assert if* Herman were to raise certain claims in a lawsuit. Aside from the inappropriateness of such a pursuit, should Herman raise a claim that Tripp Scott believes to be judicially estopped by any rulings or orders entered by this Court, the state court has concurrent jurisdiction to adjudicate such an issue. Indeed, the state court would be in the best position to adjudicate Tripp Scott's "concern" inasmuch as this Court does not have jurisdiction of the state law claims that Tripp Scott is fearful of being filed against it by Herman. See, e.g., In re Gregory, 572 B.R. 220, 235 (Bankr. W.D. Mo. 2017) ("the state court…is in the best position to determine whether either party should be judicially estopped with respect to their respective positions, particularly given that this court has no jurisdiction over the parties' state law claims").

23.     *This* Court, in In re Kourogenis, 539 B.R. 625 (Bankr. S.D. Fla. 2015), in fact ruled on this very issue in denying a motion to reopen a closed Chapter 7 proceeding. There, just like Tripp Scott here, the movant sought to have this Court reopen the closed case to enter an order on the basis of judicial estoppel to prevent the Chapter 7 debtor from taking what the movant considered to be an inconsistent position from that which the debtor took during the bankruptcy proceedings. In denying the motion to reopen, this Court poignantly noted and held,

> The doctrine of judicial estoppel has long been recognized in the Florida courts, beginning with the lead case of Palm Beach Co. v. Palm Beach Estates, 110 Fla. 77, 148 So. 544, 549 (1933), abrogated on other grounds, Ed Ricke & Sons Inc. v. Green, 609 So.2d 504, 506 (Fla.1992). For judicial estoppel to apply under Florida law, (a) the position assumed in the prior trial must have been successfully maintained; (b) the positions must be clearly inconsistent; (c) the parties and

issues must be the same; and (d) the party claiming estoppel must have been misled and have changed its position. Chase & Co. v. Little, 116 Fla. 667, 156 So. 609, 610 (1934). More recently, Florida courts have declined to apply judicial estoppel where the party sought to be estopped did not use 'intentional self-contradiction to obtain an unfair advantage in litigation.' Grau v. Provident Life & Accident Insurance Co., 899 So.2d 396, 399 (Fla.4th DCA 2005). It is clear that the application of judicial estoppel in a Florida state court is nuanced, balanced, and discretionary.

**But in all these cases dealing with judicial estoppel, the decision to apply judicial estoppel to bar a claim is always made in the second court**: having taken a position in the bankruptcy court, a former debtor may be estopped from taking an inconsistent position in a second forum as a matter of judicial discretion as exercised by the second court…. **Judicial estoppel can never be asserted in the prior forum so as to bind the subsequent forum, for to do so in a situation like that presented here would be for the bankruptcy court to intervene in post-bankruptcy litigation pending elsewhere. It is not this Court's place to exercise the judicial discretion entrusted to the Circuit Court for Broward County…. To do so would be to interfere in the judicial deliberations of another sovereign and would turn federalism on its head**. Just as federal courts below the Supreme Court cannot act in an appellate capacity over state court judgments under the *Rooker–Feldman* Doctrine, so too are **federal courts without jurisdiction to intervene in pending state court litigation to tell the state court how or if it should exercise its judicial discretion in cases pending before it**. This Court rejects the notion that it can act as a quasi-theatrical *deus ex machina* to intervene in pending state court proceedings to 'solve' them on behalf of a lender who has to date been unable to complete a foreclosure.

In re Kourogenis, 539 B.R. at 630–31 (emphasis added).

24.     As an initial matter, the foregoing passage from this Court undeniably demonstrates that judicial estoppel is simply inapplicable in this case as, *inter alia*, (i) Herman has not taken an inconsistent position in any proceeding since the bankruptcy case was dismissed, (ii) the position advanced by Herman during the bankruptcy case was not "successfully maintained" by Herman (instead, this Court verbatim adopted the creditor's 72-page proposed Findings of Fact and Conclusions of Law that vehemently **disagreed with and rejected** Herman's (and Tripp Scott's) position in its entirety during the bankruptcy proceedings) (albeit based upon incomplete evidence and not being informed of the reversal of positions taken by the trustee and the creditor well after this Court's ruling and after the appeal of same), (iii)

"the parties and issues" are not the same (i.e., Tripp Scott was <u>not</u> a party in the bankruptcy case), and (iv) even if all of the proceeding requirements were disregarded, Tripp Scott fails to illustrate how it was misled and/or detrimentally changed its position based on Herman's conduct in the bankruptcy proceedings.

25.     Nevertheless, even setting aside these independently fatal realities, this Court has clearly concluded that the basis which Tripp Scott advances – i.e., to enforce the doctrine of judicial estoppel – is entirely insufficient for this case to be suddenly reopened. <u>Id.</u>

26.     Sister courts have agreed, and some have adopted, this Court's rationale and have applied the holding of <u>Kourogenis</u> to other cases. <u>See, e.g.,</u> <u>In re Lapeyre</u>, 544 B.R. 719, 722 (Bankr. S.D. Fla. 2016) ("if the requested relief is grounded in judicial estoppel, the relief must be sought in the subsequent forum…"); <u>see also</u> <u>In re Guerra</u>, 544 B.R. 707, 711 (Bankr. M.D. Fla. 2016) ("the issue of judicial estoppel should be decided by the state court, which is in the best position to determine whether the debtor is making a mockery of the [state court] action by taking a position inconsistent with the one she took in the bankruptcy case"); <u>In re Marty</u>, 2014 WL 7466757 (Bankr. S.D. Fla. Dec. 31, 2014) (denying state court defendant's request to order the debtor to dismiss a state court lawsuit where the claim was not listed in the debtor's schedules).

27.     Simply put, not only can a state court decide the issue of judicial estoppel, but it must do so if the issue ever arises. Thus, this second factor weighs decisively against granting Tripp Scott's Motion to Reopen, which is frivolous for all of the foregoing reasons.

28.     It's clear Tripp Scott and its counsel obviously chose to willfully ignore this Court's own pertinent and dispositive rulings concerning the instant issues prior to filing its Motion and without even making an attempt to distinguish this Court's prior rulings. This course

of conduct alone shines the light on Tripp Scott's and its counsel's bad faith secondary motives and a total callous disregard for the consequences associated with filing such a motion.

### *Factor Three (Prior Determination by this Court concerning State Court)*

29.     The next factor analyzed to determine whether "prior litigation in the bankruptcy court determined that a state court would be the appropriate forum." In re Easley-Brooks, 487 B.R. at 407. In the present case, there was no prior litigation in the bankruptcy court that determined that a state court would be the appropriate forum. Therefore, this factor is, at best, neutral.

### *Factor Four (Prejudice to the Parties)*

30.     The fourth factor used to analyze whether "other cause" exists is whether "any parties would suffer prejudice should the court grant or deny the motion to reopen." In re Easley-Brooks, 487 B.R. at 407.

31.     There can be no question that, should this Court grant Tripp Scott's Motion to Reopen (especially despite all arguments in this pleading), Herman would suffer extreme prejudice. This case has been closed for nearly 2.5 years, and the order of this Court which Tripp Scott refers to and relies upon was entered nearly 5 years ago. The case resolved and was dismissed premised on the settlement of the parties, and said settlement was approved by this Court. To now force Herman to relitigate any of the issues on which Tripp Scott seeks an impermissible advisory opinion would be of great prejudice to Herman. In fact, if Herman were required to relitigate any such issues, Herman would stand to lose any benefit of the bargain of the settlement agreement that he ultimately reached to conclude the bankruptcy proceedings all together – a settlement agreement which this Court reviewed and approved.

32.     Herman stands firm in his position that he has not taken any positions inconsistent
to the ones that he took before this Court during the bankruptcy proceedings. As such, this
manufactured issue of "judicial estoppel" (even if legally available to Tripp Scott, a non-party in
this case) would never become relevant or applicable to any state court litigation. Thus, Tripp
Scott's persuading this Court to re-open this case would only serve to prejudice Herman by
causing him to expend time, energy and financial resources to litigate an entirely unnecessary
(and improper) issue before this Court. On this same note, should Tripp Scott's motion be
granted, Tripp Scott will no doubt seek to litigate other issues relative to the separation between
Tripp Scott and Herman, all of which should be litigated in state court, not in this closed
bankruptcy matter.

33.     This issue weighs heavily against reopening this case.

### *Factor Five (Benefit to Herman)*

34.     The fifth factor looks to determine and assess the "extent of the benefit to the
debtor by reopening" this case. In re Easley-Brooks, 487 B.R. at 407.

35.     Without equivocation, there is absolutely no benefit that would result to Herman
by reopening this case. In fact, the only benefit to reopening this case lies with parties who have
no interest in this bankruptcy case; and that benefit is their ability to improperly use the judicial
process to exert unfair leverage and pressure on Herman.

36.     Simply put, there is no conceivable way that the attack by Tripp Scott would
benefit Herman; in fact, even if this Court issues an advisory opinion, the issues would still be
litigated in the state court.

37.     This factor weighs against reopening the case.

### *Factor Six (No Relief Forthcoming to Tripp Scott)*

38.    The sixth, and final factor, used to analyze whether "other cause" exists to reopen a closed case is whether "it is clear at the outset that no relief would be forthcoming to the moving party." In re Easley-Brooks, 487 B.R. at 407.

39.    As an initial matter, this Court has itself previously declared it to be improper to reopen a closed Chapter 7 case to apply the doctrine of judicial estoppel based on alleged inconsistent positions being taken by a debtor outside of the bankruptcy proceedings. In re Kourogenis, 539 B.R. at 630–31 **("the decision to apply judicial estoppel to bar a claim is always made in the second court... Judicial estoppel can never be asserted in the prior forum so as to bind the subsequent forum, for to do so in a situation like that presented here would be for the bankruptcy court to intervene in post-bankruptcy litigation pending elsewhere. It is not this Court's place to exercise the judicial discretion entrusted to the Circuit Court for Broward County.... To do so would be to interfere in the judicial deliberations of another sovereign and would turn federalism on its head...")** (emphasis added).

40.    Furthermore, because what Tripp Scott seeks is tantamount to an advisory opinion from this Court on a defensive position it apparently seeks to maintain in state court litigation, such relief is unavailable. Brown & Root Braun v. Bogan, 54 Fed. App'x 542, 552 (3d Cir. 2002) ("The oldest and most consistent thread in the federal law of justiciability is that federal courts will not give advisory opinions.") (quoting Coffin v. Malbern Fed. Sav. Bank, 90 F.3d 851, 853 (3d Cir. 1996)).

41.    Aside from these fatal realities to any relief Tripp Scott is seeking in its Motion to Reopen, any ruling by this Court would not prevent any employment related claims being filed

and litigated by Herman against Tripp Scott. Such is inevitable and, thus, the relief which Tripp Scott seeks is simply not available.

42.     This factor also weighs against granting of the relief sought by Tripp Scott.

## IN THE ALTERNATIVE, TRIPP SCOTT IS BARRED FROM
## REOPENING THE CASE UNDER THE EQUITABLE DOCTRINE OF LACHES.

43.     While a bankruptcy court's discretion to reopen a case is not circumscribed by any particular time limit, "[t]he longer the time between the closing of the estate and the motion to reopen,...the more compelling the reason for reopening the estate should be." In re All. Consulting Group LLC, 2018 WL 1393740, at *4 (Bankr. S.D. Miss. Mar. 19, 2018); see also In re Johnson, 2010 Bankr. LEXIS 2764, at *10 (Bankr. N.D. Tex. Sept. 2, 2010) (quoting In re Case, 937, 1014, 1018 (5th Cir. 1991)). As such, the doctrine of laches is recognized as a defense to reopening a bankruptcy case under certain circumstances. In re Winburn, 196 B.R. 894, 897 (Bankr. N.D. Fla. 1996) ("the doctrine of laches may bar the reopening of a case").

44.     The doctrine of laches essentially looks to determine whether (i) Tripp Scott delayed in asserting its rights, (ii) Tripp Scott lacks a legitimate excuse for the delay, and (iii) Herman would be unduly prejudiced by the delay should the Court grant the Motion to Reopen. See id.

45.     As previously discussed, this Court entered a final order in the adversary proceeding nearly five years ago, and a final order approving the settlement and dismissing the case nearly 2.5 years ago. At all times, Tripp Scott was aware of and noticed of all relevant proceedings. Tripp Scott has also long been aware of the claims asserted by Herman against the firm stemming from his departure, yet has done nothing until now.

46.     Needless to say, if Tripp Scott genuinely needed or desired clarification of any of this Court's Orders (rather than simply using this court for the improper purpose of pressuring

Herman to capitulate to demands) it could have done so years ago. Equitably, the length of time that the case has been closed weighs against allowing Tripp Scott – a non-party in interest – to reopen the case.

47.     Again, Tripp Scott is represented by a very capable law firm specializing in bankruptcy law, and said firm has represented Tripp Scott since the onset of Herman's case being initiated more than six years ago. Tripp Scott also has attorneys within its own firm familiar with the intricacies of bankruptcy law. Thus, had a legitimate purpose for the Motion to Reopen existed, there would have been no need to wait until now to seek to reopen this case; any redress should have been sought prior to the closing of the bankruptcy case. Tripp Scott's delay is inexplicable and inexcusable.

48.     Furthermore, should this Court grant Tripp Scott's Motion to Reopen, there is no question that Herman would suffer extreme prejudice. Aside from the inexcusable delay in seeking relief from this Court, to now force Herman to relitigate any of the issues on which Tripp Scott seeks an impermissible advisory opinion would be of great prejudice to Herman. Plus, the state court litigation feared by Tripp Scott would not be obviated by any advisory relief this Court may issue, thereby forcing Herman to simply waste resources it would nevertheless need to use in the state court litigation.

49.     Accordingly, for all of the foregoing reasons, the doctrine of laches should also bar Tripp Scott from reopening this bankruptcy case. Tripp Scott had actual knowledge of the orders it relies upon, and of the settlement and dismissal of the case before the case was closed. Yet, Tripp Scott waited nearly 2.5 years since closure to file the Motion to Reopen. Tripp Scott has no valid justification for failing to seek interpretation of any of this Court's Orders prior to

the closing of the case, if any clarification was ever warranted. As such, the doctrine of laches should bar Tripp Scott from reopening this bankruptcy case.

## CONCLUSION

50.    Tripp Scott is not a creditor or party in interest in the bankruptcy, and it, therefore, has no standing to move to reopen the bankruptcy case. Tripp Scott is moving to reopen the bankruptcy case merely to obtain an advisory opinion, which is prohibited under long standing federal jurisprudence. The Court should deny the Tripp Scott's motion to reopen on these grounds alone.

51.    Nevertheless, even if Tripp Scott somehow had standing to move to reopen the case, there is no cause under Section 350 to reopen the case. The six factors that bankruptcy courts consider to determine if there is cause weigh against reopening the case, in every instance.

**\*\*\*\*\*SPACE INTENTIONALLY LEFT BLANK\*\*\*\*\***

52.     Further, Tripp Scott is barred by the doctrine of laches from reopening the case, as it has waited too long after having knowledge of the case and issues alleged to seek the instant relief.

53.     Finally, Tripp Scott is simply wrong on the merits of their argument on judicial estoppel and the assertion that Herman is somehow taking positions inconsistent to those he took before this Court. Tripp Scott is simply using this Motion to Reopen as a tool to pressure Herman into capitulating to unreasonable demands. By doing so Tripp Scott and its counsel, in a willfully blind fashion, have pursued a factually and legally frivolous motion. Such misuse of the judicial system by Tripp Scott and its counsel is disgraceful, done in bad faith and should be appropriately sanctioned to deter such conduct. As such, Herman has put Tripp Scott on notice of its Rule 9011 obligations.

Respectfully submitted,

Peter Herman,
By:    /S/ Peter G. Herman
Peter G. Herman, Esq. (Fla. Bar No.353991)
Service by E-Mail:  Servicepgh@THLGlaw.com
3020 NE 32nd Avenue, Suite 226
Ft. Lauderdale, FL 33308
Tel:  954-315-4874
Fax: 954-762-2554

## CERTIFICATE OF SERVICE

I certify that the foregoing Debtor's Motion for the Imposition of Sanctions against Tripp Scott, P.A. and its Counsel Pursuant to Bankruptcy Rule 9011, was served via CM/ECF, electronic mail, and/or first-class postage-prepaid U.S. Mail to all parties on the attached service list on this 17th day of August, 2018.

Peter Herman

By: /S/ Peter G. Herman
Peter G. Herman, Esq. (Fla. Bar No.353991)
Service by E-Mail: Servicepgh@THLGlaw.com
3020 NE 32nd Avenue, Suite 226
Ft. Lauderdale, FL 33308
Tel: 954-315-4874
Fax: 954-762-2554

## SERVICE LIST

*Via Email*
Andrew T. Lavin
Lavin Law Group, P.A.
alavin@lavinlawyers.com
*Attorneys for Debtor Peter Herman*

*Via U.S. Mail*
Andrew T. Lavin
Lavin Law Group, P.A.
2670 NE 215th Street
Miami, Florida 33180
*Attorneys for Debtor Peter Herman*

*Via CM/ECF Notification*
Annette Urena Tucker on behalf of Trustee Kenneth A. Welt aut@trippscott.com, iah@trippscott.com

Bart A Houston on behalf of Defendant Peter G Herman bhouston@thlglaw.com, dschena@thlglaw.com;bhouston@ecf.inforuptcy.com

Bart A Houston on behalf of Interested Party Bart Alan Houston bhouston@thlglaw.com, dschena@thlglaw.com;bhouston@ecf.inforuptcy.com

Chad P Pugatch, Esq. on behalf of Debtor Peter G Herman cpugatch.ecf@rprslaw.com

Charles W Throckmorton, Esq on behalf of Creditor Mayback & Hoffman, P.A. cwt@kttlaw.com, lf@kttlaw.com;ycc@kttlaw.com

Curtis Carlson on behalf of Creditor Farhan Naseer carlson@carlson-law.net,
service@carlsonlaw.net

Dennis J LeVine, Esq on behalf of Creditor JPMorgan Chase Bank, N.A.
tbyington@kelleykronenberg.com

Fernando J Menendez on behalf of Plaintiff Kenneth A Welt
fernando.menendez@grayrobinson.com, jennifer.phillips@gray-robinson.com

Fernando J Menendez on behalf of Trustee Kenneth A Welt
fernando.menendez@grayrobinson.com, jennifer.phillips@gray-robinson.com

Jeffrey M Ostrow on behalf of Interested Party Kopelowitz Ostrow P.A.
ostrow@kolawyers.com

John H Genovese, Esq on behalf of Other Professional Tripp Scott, P.A. jgenovese@gjblaw.
com, hburke@gjb-law.com;gjbecf@gjb-law.com

Joseph M McCandlish on behalf of Creditor HSBC BANK USA, N.A
jmccandlish@weltman.com, colnationalecf@weltman.com

Kenneth A Welt
fl10@ecfcbis.com;pacerfilings@gmail.com;kaw@trustesolutions.net;court@trusteeservices.biz
Kenneth S Jannette on behalf of Plaintiff FIA Card Services, N.A. kenj@w-legal.com

Kimberly Salamone on behalf of Trustee Kenneth A Welt ksalamone@ntmlawfirm.com,
atty_mehdipour@bluestylus.com;cm_ecf_service@ntmlawfirm.com

Kristopher E Pearson on behalf of Intervenor-Plaintiff Kenneth A Welt
kpearson@stearnsweaver.com,
mmasvidal@stearnsweaver.com;bank@stearnsweaver.com;rross@stearnsweaver.com;dillworthc
dp@ecf.epiqs ystems.com;larrazola@stearnsweaver.com;cgraver@stearnsweaver.com

Kristopher E Pearson on behalf of Trustee Kenneth A Welt kpearson@stearnsweaver.com,
mmasvidal@stearnsweaver.com;bank@stearnsweaver.com;rross@stearnsweaver.com;dillworthc
dp@ecf.epiqs ystems.com;larrazola@stearnsweaver.com;cgraver@stearnsweaver.com

Kristopher E Pearson on behalf of Plaintiff CIB Marine Capital, LLC
kpearson@stearnsweaver.com,
mmasvidal@stearnsweaver.com;bank@stearnsweaver.com;rross@stearnsweaver.com;dillworthc
dp@ecf.epiqs ystems.com;larrazola@stearnsweaver.com;cgraver@stearnsweaver.com

Kristopher E Pearson on behalf of Creditor CIB Marine Capital, LLC
kpearson@stearnsweaver.com,
mmasvidal@stearnsweaver.com;bank@stearnsweaver.com;rross@stearnsweaver.com;dillworthc
dp@ecf.epiqs ystems.com;larrazola@stearnsweaver.com;cgraver@stearnsweaver.com

Michael Foster on behalf of Special Counsel Nicole Testa Mehdipour mcf@trippscott.com, iah@trippscott.com

Michael A Friedman on behalf of Other Professional Tripp Scott, P.A. mfriedman@gjblaw. com, gjbecf@gjb-law.com;jsardina@gjb-law.com

Neil P Linden on behalf of Trustee Kenneth A Welt neil.linden@gray-robinson.com, elena.pathman@gray-robinson.com

Neil P Linden on behalf of Intervenor-Plaintiff Kenneth A Welt neil.linden@gray-robinson.com, elena.pathman@gray-robinson.com

Nicole Testa Mehdipour on behalf of Trustee Kenneth A Welt nicolem@ntmlawfirm.com, ksalamone@ntmlawfirm.com;cm_ecf_service@ntmlawfirm.com;atty_mehdipour@bluestylus.co m;cmecfservice @gmail.com

Office of the US Trustee USTPRegion21.MM.ECF@usdoj.gov Robert A. Schatzman, Esq. on behalf of Trustee Kenneth A Welt robert.schatzman@gray-robinson.com, lauren.rome@grayrobinson. com;Amador.Ruiz-Baliu@gray-robinson.com

Robert A. Schatzman, Esq. on behalf of Plaintiff Kenneth A Welt robert.schatzman@grayrobinson. com, lauren.rome@gray-robinson.com;Amador.Ruiz-Baliu@gray-robinson.com

Robert A. Schatzman, Esq. on behalf of Plaintiff Kenneth Welt robert.schatzman@grayrobinson. com, lauren.rome@gray-robinson.com;Amador.Ruiz-Baliu@gray-robinson.com

Robert A. Schatzman, Esq. on behalf of Intervenor-Plaintiff Kenneth A Welt robert.schatzman@gray-robinson.com, lauren.rome@gray-robinson.com;Amador.Ruiz-Baliu@gray-robinson.com

Zana Michelle Scarlett on behalf of U.S. Trustee Office of the US Trustee Zana.M.Scarlett@usdoj.gov
Ronald G. Neiwirth, Esq. rneiwirth@grsm.com
Robin Taylor Symons, Esq. rsymons@grsm.com

# Exhibit "A"

From: Friedman, Michael [mailto:mfriedman@gjb-law.com]

Sent: Tuesday, November 10, 2015 3:51 PM

To: Chad Pugatch

Cc: Christian Savio

Subject: RE: Herman

Chad, it's regrettable that we couldn't resolve it by agreement. I can understand why Peter would be upset by Judge Olson's remarks, which were entirely unsolicited by me, and I would have been surprised by them if it were any other judge. Clearly Judge Olson has very strong feelings about the case and I'd hope Peter is proceeding with that in mind. You recognized during the hearing that this fight is an uphill battle for Peter. I'd classify that as an understatement to say the least.

I'll pass your email below along to TS and let you know.

Thanks,

Michael Friedman

Genovese Joblove & Battista, P.A.

Direct: (305) 372-2495